1
2
3
4
5
6
7
8          UNITED STATES DISTRICT COURT
9          CENTRAL DISTRICT OF CALIFORNIA
10
11   SPOTLIGHT TICKET                      Case No. 2:24-cv-00859-WLH-SSC
12   MANAGEMENT, INC. d/b/a
13   TICKETMANAGER,                        **ORDER GRANTING IN PART AND
                                           DENYING IN PART DEFENDANT'S**
14                   Plaintiff,            **MOTION TO DISMISS [40]**
15   v.
16   CONCIERGE LIVE LLC,
17                   Defendant.
18

19        Before the Court is Defendant Concierge Live, LLC's ("Defendant") Motion to
20   Dismiss the First Amended Complaint (the "Motion").  (Mot., Docket No. 40).
21   Plaintiff Spotlight Ticket Management, Inc., d/b/a TicketManager ("Plaintiff") filed an
22   opposition to Defendant's Motion (the "Opposition").  (Opp'n, Docket No. 44).
23   Defendant subsequently filed its reply in support of its Motion (the "Reply").  (Reply,
24   Docket No. 47).  The matter is fully briefed.
25        On June 7, 2024, the Court held a hearing and heard oral arguments from all
26   parties.  After considering the parties' arguments and submitted evidence, and for the
27   reasons discussed below, the Court **GRANTS** in part and **DENIES** in part
28   Defendant's Motion.

I.    **BACKGROUND**

A. <u>**Factual Background**</u>

Plaintiff is a technology company that provides ticket and event management enterprise solutions.  (First Amended Compl. ("FAC"), Docket No. 36 ¶ 15–17). Plaintiff is a Delaware corporation with its principal place of business in Calabasas, California.  (*Id.* ¶ 1).  In October 2016, Plaintiff entered into an exclusive agreement with Ticketmaster, LLC ("Ticketmaster"), a ticket sales and distribution company, in which Plaintiff "was granted the exclusive right to directly integrate its technology with Ticketmaster's software and systems platform."  (*Id.* ¶ 22).  This agreement granted Plaintiff the exclusive right to have Ticketmaster "integration"—namely, "the ability to access Ticketmaster's application programming interfaces ("API") to automatically and directly move Ticketmaster tickets without needing to go through the Ticketmaster website…."  (*Id.* ¶ 25).  In exchange for this exclusive agreement, Plaintiff pays Ticketmaster an annual fee and a percentage of its revenue.  (*Id.* ¶ 26). To date, Plaintiff alleges that it has paid millions of dollars for this exclusive right, which gives it "a significant competitive edge in relation to its competitors."  (*Id.* ¶¶ 26,29).

Defendant is also a technology company that competes with Plaintiff to provide similar ticket and event management services.  (*Id.* ¶ 115).  Defendant is a Georgia corporation with its principal place of business in Atlanta, Georgia.  (*Id.* ¶ 3).  Plaintiff alleges that, since at least 2019, Defendant has been falsely advertising and misrepresenting through its "public website, marketing materials, and direct communications with potential clients" in pitch meetings that Defendant has the same functionality and integration capability with Ticketmaster as Plaintiff.  (*Id.* ¶ 48). Plaintiff further alleges that Defendant falsely characterizes Plaintiff's relationship

1  with Ticketmaster as merely a marketing agreement, and not an exclusive agreement.

2  (*Id.*).

3       As to Defendant's allegedly false advertisements contained on its website,

4  Plaintiff alleges that they exist on publicly available portions of Defendant's website

5  that instruct users about Defendant's integration process with Ticketmaster.  (*Id.*

6  ¶¶ 49–63, Exhs. A–J).  Additionally, Defendant has made the above-mentioned

7  misrepresentations in connection with pitch meetings and/or requests for proposal

8  ("RFPs") in which Plaintiff and Defendant competed for business.  (*Id.* ¶¶ 88–107).

9  One meeting in particular involved a pitch to an online food ordering and delivery

10 company in November 2022.  (*Id.* ¶ 97).  Plaintiff alleges that it lost the business to

11 Defendant because Defendant "falsely represented… that it could perform all the

12 same functionality as [Plaintiff]—including integrations with Ticketmaster—but for a

13 lower cost."  (*Id.*).

14       **B. <u>Procedural History</u>**

15       On January 31, 2024, Plaintiff filed its initial Complaint alleging five causes of

16 action against Defendant.  (Compl., Docket No. 1).  Plaintiff subsequently filed its

17 FAC, the operative complaint, dated March 29, 2024.  (Docket No. 47).  The FAC

18 alleges the following five causes of action: (1) False Advertising in violation of the

19 Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) False Advertising under the California

20 False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 *et. seq.*; (3) Unfair

21 Competition Law ("UCL") under Cal. Bus. & Prof. Code § 17200 *et. seq.*;

22 (4) Intentional Interference with Contractual Relations; and (5) Intentional

23 Interference with Prospective Economic Advantage.  (*See generally id*).

24       On April 12, 2024, Defendant filed the instant Motion seeking to dismiss

25 Plaintiff's FAC in its entirety under Rule 12(b)(2), (b)(3), and (b)(6).  (Docket No.

26

27

28

3

40).  On May 17, 2024, Plaintiff filed its Opposition.  (Docket No. 44).  Defendant subsequently filed its Reply on May 24, 2024.  (Docket No. 47).

## II.    LEGAL STANDARD

### A.  Rule 12(b)(2)

Under Fed. R. Civ. P. 12(b)(2), "[w]hen a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of demonstrating that the court has jurisdiction."  *In re W. States Wholesale Nat. Gas Antitrust Litig.* (*Western States*), 715 F.3d 716, 741 (9th Cir. 2013).  Where the motion is based on written material rather than on an evidentiary hearing, the plaintiff need only make a *prima facie* showing of jurisdictional facts.  *Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons."  *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  "Because 'California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution,' our inquiry centers on whether exercising jurisdiction comports with [constitutional] due process."  *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015); *see* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").

"Federal due process permits a court to exercise personal jurisdiction over a nonresident defendant if that defendant has at least 'minimum contacts' with the relevant forum such that the exercise of jurisdiction 'does not offend traditional notions of fair play and substantial justice.'"  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1106 (9th Cir. 2020) (quoting *Schwarzenegger*, 374 F.3d at 801) (quotation marks omitted).  "Those contacts may be so continuous and systematic as to render a defendant essentially at home in the forum state and amenable to any suit there.  Alternatively, a court may exercise jurisdiction over 'issues deriving from, or connected with, the very controversy that

4

1    establishes jurisdiction.'" *Id.* (quoting *Goodyear Dunlop Tires Operations, S.A. v.*
2    *Brown*, 564 U.S. 915, 919 (2011)).  "The Supreme Court has referred to these
3    different bases for personal jurisdiction as 'general' and 'specific' jurisdiction." *Id.* at
4    1106–07 (citing *Bristol-Myers Squibb Co. v. Super. Ct.*, 137 S. Ct. 1773, 1779–80
5    (2017)).

6    **B. <u>Rule 12(b)(3)</u>**

7    Under Rule 12(b)(3), a party may move to dismiss an action based on improper
8    venue.  Rule 12(b)(3) allows dismissal only when venue is "wrong" or "improper," a
9    determination made exclusively in relation to whether "the court in which the case
10    was brought satisfies the requirements of federal venue laws." *Atl. Marine Const. Co.*
11    *v. U.S. Dist. Ct. for W. Dist. of Texas*, 571 U.S. 49, 55 (2013).  When venue is
12    challenged, courts must "determine whether the case falls within one of the three
13    categories set out in [28 U.S.C.] § 1391(b).  If it does, venue is proper; if it does not,
14    venue is improper, and the case must be dismissed or transferred under [28 U.S.C.]
15    § 1406(a)." *Id.* at 56.

16    Once challenged, the plaintiff has the burden of showing that venue is proper.
17    *See Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir.
18    1979).  "Unlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(3) does not require
19    that the pleadings be accepted as true.  The court is permitted to consider facts outside
20    of the pleading." *Color Switch LLC v. Fortafy Games DMCC*, 377 F. Supp. 3d 1075,
21    1082 (E.D. Cal. 2019), *aff'd*, 818 F. App'x 694 (9th Cir. 2020) (quotation marks
22    omitted).

23    **C. <u>Rule 12(b)(6)</u>**

24    Under Fed. R. of Civ. P. 12(b)(6), a party may move to dismiss a cause of
25    action for failure to state a claim upon which relief can be granted.  A complaint may
26    be dismissed for failure to state a claim for one of two reasons: (1) lack of a
27    cognizable legal theory; or (2) insufficient facts under a cognizable legal theory. *Id.*;
28    *see also Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir.

2008).  "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court must construe the complaint in the light most favorable to the plaintiff, accept all allegations of material fact as true, and draw all reasonable inferences from well-pleaded factual allegations.  *Gompper v. VISX, Inc.*, 298 F.3d 893, 896 (9th Cir. 2002).  The court is not required to accept as true legal conclusions couched as factual allegations.  *See Iqbal*, 556 U.S. at 678.  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

Pursuant to Fed. R. Civ. P. 15(a)(2), courts granting dismissal should freely give leave to amend "when justice so requires."  Courts apply this policy with "extreme liberality."  *Morongo Band of Mission Indians v. Rose*, 893 F.2d 1074, 1079 (9th Cir. 1990); *see also Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (holding that dismissal with leave to amend should be granted even if no request to amend was made).  Courts consider four factors in determining whether to grant leave to amend: (1) undue delay; (2) bad faith; (3) futility of amendment; and (4) prejudice to the opposing party. *United States v. Webb*, 655 F.2d 977, 980 (9th Cir. 1981) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## III.    DISCUSSION

### A.    <u>Rule 12(b)(2) - Personal Jurisdiction</u>

The Supreme Court has recognized two types of personal jurisdiction: "'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." *Bristol-Myers Squibb Co. v. Super. Ct.*, 582 U.S. 255, 262 (2017).  Plaintiff does not dispute that the Court lacks general jurisdiction

over Defendant.  As such, the Court will only address whether specific jurisdiction exists.

The Ninth Circuit has established a three-part test for determining specific jurisdiction: (1) the defendant must purposefully avail himself of the privilege of conducting activities in the forum and invoking the benefits and protections of its laws; (2) the claim must arise out of or result from the defendant's forum-related activities; and (3) exercise of jurisdiction must be reasonable.  *Rano v. Sipa Press, Inc.*, 987 F.2d 580, 588 (9th Cir. 1993); *see also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475–76 (1985).  The party asserting jurisdiction bears the burden of satisfying the first two prongs of this test.  *Schwarzenegger*, 374 F.3d at 802.  If it does so, then the burden shifts to the party contesting jurisdiction to "present a compelling case" that the third prong of reasonableness has not been satisfied.  *Id.*

i. *Purposeful Availment or Purposeful Direction*

As to the first prong, courts generally apply either a "purposeful availment" or "purposeful direction" test.  *Glob. Commodities Trading Grp., Inc. v. Beneficio de Arroz Choloma, S.A.*, 972 F.3d 1101, 1107 (9th Cir. 2020).  "Purposeful availment generally provides a more useful frame of analysis for claims sounding in contract, while purposeful direction is often the better approach for analyzing claims in tort."  *Id.* at 1107.  The "purposeful availment" test, asks if the defendant "performed some type of affirmative conduct which allows or promotes the transaction of business within the forum state."  *Sinatra v. Nat'l Enquirer, Inc.*, 854 F.2d 1191, 1195 (9th Cir. 1988).  The "purposeful direction" test "inquire[s] whether a defendant 'purposefully direct[s] his activities' at the forum state, applying an 'effects' test that focuses on the forum in which the defendant's actions were felt, whether or not the actions themselves occurred within the forum."  *Yahoo! Inc. v. La Ligue Contre Le Racisme*, 433 F.3d 1199, 1206 (9th Cir.2006) (en banc).  As this case involves only tort claims,

1    the court will analyze this case under the "purposeful direction" test.[1]  *See, e.g. AMA*

2    *Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1208 (9th Cir. 2020) ("[The plaintiff]

3    alleges copyright and trademark infringement claims, which sound in tort, so we apply

4    a 'purposeful direction' analysis and ask whether [the defendant] has purposefully

5    directed activities at the United States.") (citation omitted).

6                    *a.  The Calder Effects Test*

7            To determine in tort claims whether the first prong of the specific jurisdiction

8    analysis is met, the Ninth Circuit applies a three-part "effects" test derived from

9    *Calder v. Jones*, 465 U.S. 783 (1984) (the "*Calder* Effects Test").  "Under this test, a

10   defendant purposefully direct[s] his activities at the forum if he: (1) commit[s] an

11   intentional act, (2) expressly aimed at the forum state, (3) causing harm that the

12   defendant knows is likely to be suffered in the forum state."  *Picot*, 780 F.3d at 1214.

13   (internal quotation marks and citations omitted).  "In applying this test, we must look

14   to the defendant's contacts with the forum State itself, not the defendant's contacts

15   with persons who reside there."  *Id.* (internal quotation marks and citation omitted).

16           First, the Court finds that the "intentional act" prong is satisfied.  "For purposes

17   of jurisdiction, a defendant acts intentionally when he acts with an intent to perform

18   an actual, physical act in the real world, rather than an intent to accomplish a result or

19   consequence of that act."  *AMA Multimedia*, 970 F.3d at 1209 (citing *Schwarzenegger*,

20   374 F.3d at 806).  Defendant committed an intentional act when it allegedly falsely

21   advertised and represented on "its public website, marketing materials, and direct

22   communications with potential clients" that, among other things, Defendant

---

[1] Plaintiff incorrectly argues that the *Calder* Effects Test does not apply in this matter
because it applies "only for matters involving actions taken outside of the forum that
are directed at the forum."  (Docket No. 44).  Plaintiff's description of the *Calder*
Effects Test, however, describes exactly the conduct that occurred in this matter—i.e.,
Defendant's alleged tortious conduct—which was allegedly aimed at California.  *See
Picot v. Weston*, 780 F.3d 1206, 1212 (9th Cir. 2015) (finding that the "exact form of
our jurisdictional inquiry depends on the nature of the claim at issue" and applying
both purposeful availment and *Calder* Effects Test because plaintiff "asserts both a
contract and a tort claim").

1    purportedly has the same integration that Plaintiff has with Ticketmaster.  *See, e.g.*

2    *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1156 (9th Cir. 2006) (operating a website

3    was an intentional act where the claim arose out of the website name's infringement of

4    a trademark).

5         Next, the Court looks to whether Plaintiff sufficiently alleged that Defendant's

6    conduct was expressly aimed at California under the second prong of the *Calder*

7    Effects Test.  Express aiming "is satisfied when the defendant is alleged to have

8    engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a

9    resident of the forum state." *Bancroft & Masters, Inc. v. Augusta Nat'l Inc.*, 223 F.3d

10   1082, 1087 (9th Cir. 2000); *see also Calder*, 465 U.S. at 788.  Plaintiff alleges three

11   types of conduct that Defendant expressly aimed at California: (1) Defendant's

12   website advertisements regarding its California-based partnerships and sponsors with

13   companies such as Adobe and Google; (2) Defendant's solicitation of California-

14   based businesses through various RFP and pitches, which involve meetings with

15   California employees; and (3) Defendant's facilitation of "ticket management,

16   transfers, and sales for events in California" for Defendant's California based clients.

17   (Decl. of Kenneth Hanscom ("Hanscom Decl."), Docket No. 44-2 ¶¶ 7–14; FAC

18   ¶ 12).  Defendant counters that its partnerships with Adobe and Google predate

19   Defendant's development of any integration to external ticket platforms and are thus

20   unrelated to Plaintiff's allegations in this case.  (Decl. of Guinio Volpone ("Volpone

21   Decl."), Docket No. 40-2 ¶ 6)).  Further, Defendant clarified that all its meetings to

22   solicit business through RFPs, including its meeting with a California based food

23   delivery company, occurred virtually and with participants who appeared from outside

24   of California.  (*Id.*).  Lastly, Defendant's business with its California clients has no

25   relation to the false advertising and statements about Defendant's Ticketmaster

26

27

28

1   integration at issue in this case.  The Court will address each category of Defendant's
2   conduct below.

3       With respect to Defendant's website, "expressly aimed" conduct requires
4   "something more" than merely operating a passive website.  *See, e.g. Cybersell Inc. v.*
5   *Cybersell Inc*., 130 F.3d 414, 417–18 (9th Cir. 1997) (finding that there must be
6   "something more to indicate that the defendant purposefully (albeit electronically)
7   directed [its] activity in a substantial way to the forum state.").  Factors considered
8   include the "interactivity of the defendant's website…; the geographic scope of the
9   defendant's commercial ambitions…; and whether the defendant 'individually
10  targeted' a plaintiff known to be a forum resident…."  *Mavrix Photo, Inc. v. Brand*
11  *Techs., Inc.*, 647 F.3d 1218, 1229 (9th Cir. 2011) (internal citations and quotation
12  marks omitted).  For example, in *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d
13  1218, 1229 (9th Cir. 2011), the Ninth Circuit grappled with the issue of whether
14  tortious conduct on a nationally accessible website was expressly aimed at California.
15  The plaintiff in *Mavrix*, Mavrix Photo, Inc. ("Mavrix") was a Florida corporation that
16  sold photographs of California-based celebrities.  *Id.* at 1221, 1230.  Mavrix brought a
17  suit against defendant Brand Technologies, Inc. ("Brand"), an Ohio corporation, for
18  copyright infringement when Brand allegedly posted Mavrix's photographs on
19  Brand's celebrity gossip website without permission.  *Id.* 1222–23.  In finding that
20  Brand had expressly aimed its business at California, the *Mavrix* court found
21  particularly relevant the fact that Brand's website focused on the "California-
22  centered" celebrity, made money from "third-party advertisements for jobs, hotels,
23  and vacations in California," and had business with various California-based
24  companies such as web designers, and internet advertising companies.  *Id.*

25      Here, Plaintiff alleges that personal jurisdiction exists over Defendant's claims
26  because Defendant advertised its services for California businesses by using
27  testimonials from its California partners and sponsors on its website.  The Court finds
28  this insufficient to establish express aiming.  Unlike, in *Mavrix*, Defendant's website

does not advertise to a California client base and lacks any specific forum focus. *See, e.g. AMA Multimedia,* 970 F.3d at 1210 (finding that a defendant's website did not expressly aim towards California due to website's lack of forum specificity). Further, the testimonials from Defendant's California partners and sponsors only demonstrate the existence of a relationship and not necessarily the targeting of California businesses. Plaintiff only alleges that Defendant "touts its connection to California" but does not make the connection that Defendant uses these testimonials to target California companies. *See contra, Bratt v. Love Stories TV, Inc*., No. 23-CV-0100-BAS-JLB, 2024 WL 312680, at *5 (S.D. Cal. Jan. 26, 2024) (finding defendant expressly aimed activities at forum by "offering infringing content through its websites and social media channels in an attempt to 'partner with business in California, in terms of sales and partnerships.'"). As such, the Court finds that Defendant's website alone is insufficient to justify personal jurisdiction.

Likewise, the Court finds that Defendant's facilitation of ticket management services of California customers is insufficient to demonstrate express aiming at the forum. Other than alleging that Defendant has partnerships with California based clients, Plaintiff does not explain how Defendant's ticket management service expressly aims activity at California. Indeed, Plaintiff concedes that "[w]ithout discovery… [Plaintiff] is limited in its ability to offer direct evidence that [Defendant] has managed, transferred, or sold tickets to individuals located in California on behalf of its corporate customers." (Docket No. 44 at 6).

The Court, however, does find that Defendant's solicitation of business through pitches and RFPs directed at California-based companies establishes express aiming. (Hanscom Decl. ¶ 6–14; FAC ¶ 12). Plaintiff alleges three instances in which Defendant has solicited business from California-based businesses through RFPs. One RFP involved a November 2022 pitch directed at obtaining the business of a California-based online food delivery company. (*Id.* ¶ 97). Plaintiff alleges that it suffered harm because Defendant falsely represented during that pitch that Defendant

had the same functionality as Plaintiff but at a lower cost. (*Id.*). Defendant counters that the pitches and/or RFPs cannot constitute express aiming because the meetings occurred virtually and all of the participants were physically located in either New York or New Jersey. (Docket No. 47 at 4). The Court finds this argument unavailing. Even though the parties were not physically located in California, the Defendant's acts were aimed at a California-based company seeking their California business, and it is foreseeable that the effects of Defendant's conduct would likely be felt in California, as discussed in more detail below. *Calder*, 465 U.S. 783 (finding jurisdiction even if the actions causing the effects in California were performed outside of the state)). Defendant's alleged actions show more than simply soliciting business on a nationwide basis, but rather targeted activity expressly aimed at obtaining business from California companies. Thus, the Court finds that the express aiming prong of this *Calder* Effects Test is satisfied to the extent that Plaintiff's claims are based on the misrepresentations through solicitation of business. As to Plaintiff's claims based on the advertising on the website, however, the Court finds that it does not have jurisdiction.

The third prong looks to whether the Defendant knew that the brunt of the harm is likely to be suffered in the forum state. *Ayla, LLC v. Alya Skin Pty. Ltd.*, 11 F.4th 972, 980 (9th Cir. 2021). Notably, this element can be satisfied even if the "bulk of the harm occurs outside the forum." *Id.* Here, it is reasonable to infer that Defendant should have known that soliciting business from California-based companies could cause harm to Plaintiff who is also based in California. *See Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1321 (9th Cir. 1998) (reasoning the defendant's conduct involving trademark infringement would likely have the effect of injuring the plaintiff in California where it had its principal place of business). If Defendant had won the business, it would have managed the corporate ticket database for a California company presumably with California based employees and events. Accordingly, the

Court finds that the third prong is satisfied, and the purposeful direction requirement is satisfied.

### ii. *Claims Arise Out of Defendant's Forum-Related Activities*

The second prong of the specific jurisdiction test requires that the claims "arise out of" the defendant's forum-related activities. *Bristol-Myers*, 582 U.S. at 271 (quoting *Daimler*, 571 U.S., at 127). In other words, "there must be 'an affiliation between the forum and the underlying controversy, principally, [an] activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation.'" *Id.* at 262. The "arise out of" and "relate to" elements are separate requirements, either of which is independently sufficient to find personal jurisdiction exists. *Yamashita v. LG Chem, Ltd*., 62 F.4th 496, 504 (9th Cir. 2023) (citing *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021)). "[F]or a claim to arise out of a defendant's forum contacts requires causation, while a claim can relate to those contacts, even absent causation, where, for example, 'a company ... serves a market for a product in the forum State and the product malfunctions there.'" *Yamashita*, 62 F.4th at 504–05 (quoting *Ford*, 141 S. Ct. at 1026–27). Because Defendant's solicitation of business through pitches and RFP was directed at California-based companies and form the basis of the alleged harm to Plaintiff, the Court finds that this prong is satisfied.

### iii. *Reasonableness*

Plaintiff has satisfied its burden as to the first two prongs, and as such the burden shifts to Defendant to "present a compelling case" that the exercise of jurisdiction would be unreasonable and therefore violate due process. *Burger King*, 471 U.S. at 480. Courts consider the following seven factors: "(1) the extent of the defendant's purposeful interjection into the forum state's affairs; (2) the burden on the defendant of defending in the forum; (3) the extent of conflict with the sovereignty of the defendant's state; (4) the forum state's interest in adjudicating the dispute; (5) the most efficient judicial resolution of the controversy; (6) the importance of the forum

to the plaintiff's interest in convenient and effective relief; and (7) the existence of an alternative forum." *Freestream Aircraft (Berm.) Ltd. v. Aero L. Grp.*, 905 F.3d 597, 607 (9th Cir. 2018).

Here, Defendant fails to satisfy its burden to "present a compelling case." *Burger King,* 471 U.S. at 480.  Defendant's Motion only contains two sentences addressing their burden.  (Docket No. 40-1 at 19).  The first sentence states the above-mentioned seven factors, and the second sentence states in a conclusory manner that Plaintiff's "lack of any meaningful connection to California" warrants hearing this action in another forum.  (*Id.*).  Because Defendant failed to satisfy its burden as to this prong, the Court **DENIES** Defendant's Motion seeking dismissal on Rule 12(b)(2) grounds.

**B.  Rule 12(b)(3) - Venue**

Venue over Lanham Act and UCL claims are governed by the general venue statute 28 U.S.C. § 1391.  *Allstar Mktg. Grp., LLC v. Your Store Online, LLC*, 666 F.Supp.2d 1109, 1128 (C.D.Cal.2009); *see also  Allen v. Similasan Corp.*, No. 12CV0376–BTM–WMC, 2013 WL 2120825, at *8 (S.D.Cal. May 14, 2013).  The general venue statute provides that venue is proper in "any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action." 28 U.S.C. § 1391(b)(3).  Here, Defendant contends, in a conclusory manner, that venue is improper without offering any reasons.  Nevertheless, the Court declines to address venue because it has already concluded that it may properly exercise personal jurisdiction over Defendant's claims.  Accordingly, the Court **DENIES** Defendant's Motion as to improper venue as moot.

**C.  Rule 12(b)(6) – Failure to State a Claim**

i.  *FAL and UCL Claims (Causes of Action II and III)*

Plaintiff alleges a claim of false advertising under the FAL and an unfair competition claim under the UCL.  "[S]tate common law claims of unfair competition … are 'substantially congruent' to claims made under the Lanham Act…."  *Cleary v.*

*News Corp.*, 30 F.3d 1255, 1262–63 (9th Cir. 1994). Similarly, "[c]laims under the FAL are substantially congruent to those under the Lanham Act." *Allergan USA, Inc. v. Prescribers Choice, Inc.*, 364 F. Supp. 3d 1089 1108 (C.D. Cal. 2019). As such, the Court will apply standard for the Lanham Act, FAL, and UCL interchangeably.

### a. Fraud Pleading Standard

As an initial matter, this Court joins the many district courts that have adopted the heightened pleading standard under Rule 9(b) to Lanham Act, FAL, and UCL claims. Under Rule 9(b), a Plaintiff must "state with particularity the circumstances constituting fraud or mistake." *See also Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "The complaint must specify such facts as the times, dates, places, benefits received, and other details of the alleged fraudulent activity." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir.1993). In addition, the "plaintiff must set forth what is false or misleading about a statement, and why it is false." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir.2003) (*quoting In re Glenfed Inc. Secs. Litig.*, 42 F.3d 1541, 1548 (9th Cir.1994)).

The Court finds that Plaintiff's false advertising claim meets the heightened pleading standard under Rule 9(b). Plaintiff's FAC contains several allegations of pitches/RFPs in which Plaintiff and Defendant competed for business. (Docket No. 36 ¶¶ 88–89, 90–107). Plaintiff alleges the "what" is Defendant soliciting business from competitors, the "when" includes the dates of the various pitch meetings and RFPs, and the "how" was through the use of false advertisements on its website, marketing materials, and misrepresentations. (*Id.*). While Plaintiff fails to allege the "who" including the individuals present at the meetings (other than the Defendant and the entity issuing the RFP), the "where" including the location or place of the pitches/RFPs, and the specific content of the allegedly false representations including a statement about why each statement is false, this is because Plaintiff was not in the room during the pitches. Further, Plaintiff does not need to plead "the exact content" of Defendant's RFP responses in order to meet Rule 9(b)'s pleading standard.

*Sparrow Inc. v. Lora*, No. CV 14-01188-MWF(JCX), 2014 WL 12561587, at *6 (C.D. Cal. Aug. 5, 2014) (citing *Wool v. Tandem Computers, Inc*., 818 F.2d 1433, 1439 (9th Cir. 1987)) (superseded on other grounds).  When facts supporting a fraud allegation are solely within the opposing party's knowledge, "the particularity requirement of Rule 9(b) may be met if the allegations are accompanied by "a statement of facts upon which the belief is founded."  *Id*.; *see also Moore v. Kayport Package Exp., Inc.*, 885 F.2d 531, 540 (9th Cir. 1989) (finding that while Rule 9(b)'s pleading requirements "may be relaxed as to matters within the opposing party's knowledge").  Plaintiff has sufficiently alleged the statements for particular pitches/RFPs including discussing whether the statements were contained in marketing materials, the RFP, or were provided orally.  Accordingly, the Court **DENIES** Defendant's Motion under Rule 12(b)(6) as to Plaintiff's failure to meet the heightened pleading standard.

### b. False Advertising

A false advertising claim requires that the alleged false statements be part of a "commercial advertisement about [defendant's] own or another's product."  *BHRS Grp., LLC v. Brio Water Tech*., Inc., 553 F. Supp. 3d 793, 799 (C.D. Cal. 2021) (citation omitted).  Commercial advertising, in turn, is "(1) commercial speech, (2) by the defendant who is in commercial competition with the plaintiff, (3) for the purpose of influencing consumers to buy defendant's goods or services, and (4) that is sufficiently disseminated to the relevant purchasing public."  *Ariix, LLC v. NutriSearch Corp*., 985 F.3d 1107, 1114–15 (9th Cir. 2021) (citing *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 735 (9th Cir. 1999)).  For the purposes of the last prong, for dissemination to be "sufficient," it must "be part of an organized campaign to penetrate the relevant market, which typically involves widespread dissemination within the relevant industry."  *Id.* at 1121 (citation and quotations omitted).

The FAC alleges that the commercial advertisement is comprised of sections of

Defendant's public website[2] containing user support articles and presentation
materials.[3]  Specifically, the portions of Defendant's website referred to in the FAC
and their embedded presentations are all contained within Defendant's support
section, with headers and titles such as "How do I add Ticketmaster inventory into
Concierge Live?" or "How do I add Ticketmaster inventory into Concierge Live?"
(FAC ¶¶ 50–63, Exhs. A–J").  Although Plaintiff characterizes these materials as
"marketing materials," the Court's analysis of the webpages and presentations, which
are affixed as exhibits to the FAC, suggests otherwise.  The webpages are located
within a section of Defendant's website where the web address contains the term
"support."  (*See, e.g., id.* at Exh. A at 1) ("https://support.conciergelive.com/hc/en-
us/articles/360034613572-How-do-I-add-Ticketmaster-inventory-into-Concierge-
Live-").  Further, the content of the content on the website is written in a question-
and-answer format suggesting that this material is a guide for users of Defendant's
platform.  (*Id.*).  Likewise, the presentation slides contain answers to the relevant
questions in bullet point format with screen shots of Defendant's platform and step-
by-step instructions.  (*Id.*).  As such, the Court finds that these materials are more akin
to guides or instruction manuals and not commercial advertisement.  *See, e.g., Prager
Univ. v. Google LLC*, 951 F.3d 991, 1000 (9th Cir. 2020) (holding that plaintiff failed
to "allege any facts to overcome the commonsense conclusion" that the alleged
misrepresentations contained within the "terms of service, community guidelines, and

---

[2] Defendant disputes that the materials that Plaintiff cites are publicly available.
(Docket No. 40 at 22–23).  At this stage of the case, however, the Court must construe
the complaint in the light most favorable to the plaintiff and accept all allegations of
material fact as true.  Regardless, whether or not this material is publicly available is
not dispositive of anything as the Court finds that the material itself is not
"commercial advertisement."
[3] The FAC also affixes a job posting for a web developer position at Defendant's
company and alleges that job description contains the false statement that Defendant
has integration services with Ticketmaster.  (FAC 65, Exh. K).  Importantly,
Defendant does not identify the source of this job posting, nor does it discuss how a
job posting may constitute "commercial advertising.".

contracts are not advertisements or a promotional campaign") (citing *First Health Grp. Corp. v. BCE Emergis Corp.*, 269 F.3d 800, 804 (7th Cir. 2001) (statements in a "contract" are not "commercial advertising or promotion"); *Interlink Prods. Int'l, Inc. v. Cathy Trading, LLC*, 2017 WL 931712, at *5 (D.N.J. Mar. 9, 2017) ("instruction manuals are not advertisements or promotions"). Accordingly, the Court **GRANTS** Defendant's Motion as to Plaintiff's second and third causes of action.

> ii. *Tortious Interference with Contractual Relations (Cause of Action IV)*

The elements of tortious interference with contractual relations are "(1) a valid contract between plaintiff and a third party; (2) the defendant's knowledge of this contract; (3) the defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998). Defendant challenges the second, third, and fourth elements of Plaintiff's claim.

As to the second element, Defendant argues that the FAC "fails to identify any right that has allegedly been infringed" and Defendant's "knowledge of the specific right at issue." (Docket No. 41 at 30). The Court agrees. While the FAC clearly asserts the right infringed—i.e., the benefit of the exclusive integration relationship with Ticketmaster "for which Spotlight has paid annual fees totaling millions of dollars"—Plaintiff does not sufficiently allege Defendant's knowledge of this contract or the exclusive agreement. (FAC ¶ 109). Plaintiff alleges that Defendant knew of the contract and exclusive agreement because Ticketmaster issued a public letter dated March 31, 2021, in which Ticketmaster "affirmed that it entered into an '**exclusive** partnership'" with Plaintiff and that Plaintiff is the "**only** Ticketmaster partner who has integration with Ticketmaster in the event and corporate ticket management market." (*Id.* ¶ 81) (emphasis in original). Plaintiff, however, does not sufficiently allege that Defendant is aware of this public letter. Confusingly, Plaintiff tries to connect Defendant's knowledge of the letter with Defendant's use of Ticketmaster's

1    application programing interface ("API"), which requires acceptance of

2    Ticketmaster's Terms of Use (the "TOU").  (*Id.* ¶ 79).  The TOU includes a provision

3    that prevents users from deriving revenue from use of the API.  (*Id.* ¶ 77).  Plaintiff

4    alleges that due to improper use of the API, Ticketmaster has had to warn consumers

5    regarding Defendant's false claims of integration.  (*Id.* ¶ 80).  Plaintiff then

6    contradicts itself and alleges that "[u]pon information and belief [Defendant] may not

7    be using the Ticketmaster API directly" and instead may be using a "third party

8    intermediary."  (*Id.* ¶¶ 84–85).  Given the lack of clear allegations demonstrating

9    Defendant's knowledge of the exclusive agreement, the Court **GRANTS** Defendant's

10   Motion as to Plaintiff's fourth cause of action.

11                    iii. *Intentional Interference with Prospective Economic Advantage*

12                         *(Cause of Action V)*

13            The elements of interference with prospective economic advantage are "(1) an

14   economic relationship between the plaintiff and another, containing a probable future

15   economic benefit or advantage to plaintiff, (2) defendant's knowledge of the existence

16   of the relationship, (3) that defendant intentionally engaged in acts or conduct

17   designed to interfere with or disrupt the relationship, (4) actual disruption, and

18   (5) damage to the plaintiff as a result of defendant's acts."  *Foremost Groups Inc. v.*

19   *Ayers Bath USA Corp.*, No. CV 11-07473 GAF (EX), 2012 WL 13012450, at *3

20   (C.D. Cal. May 7, 2012) (quoting *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11

21   Cal. 4th 376, 380 n.1 (1995)) (internal quotations omitted).  As to the third element, a

22   plaintiff must additionally allege "that the defendant's conduct was 'wrongful by some

23   legal measure other than the fact of interference itself.'"  *Ixchel Pharma, LLC v.*

24   *Biogen, Inc.*, 9 Cal. 5th 1130, 1142, 470 P.3d 571, 576 (2020) (quoting *Della Penna*,

25   11 Cal. 4th at 392).   "[A]n act is independently wrongful if it is unlawful, that is, if it

26   is proscribed by some constitutional, statutory, regulatory, common law, or other

27   determinable legal standard."  *Korea Supply v. Lockheed Martin Corp.*, 29 Cal.4th

28   1134, 1159 (2003).

1    Defendant challenges Plaintiff's intentional interference with prospective
2    economic advantage relationship claim on the grounds that it does not allege an
3    independent wrong outside of the interference itself and because the interference
4    privileged.  (Docket No. 40-1 at 29).  Defendant contends that because this claim
5    "rests on the same false advertising claims that are deficient, this claim cannot stand
6    independently."  The Court agrees with Defendant.  Plaintiff alleges that in addition to
7    the alleged interference contained on their website, Defendant repeated the same
8    "false representations directly to prospective customers, including in connection with
9    pitches and RFP processes involving [Plaintiff]."  (FAC ¶ 187).  This conduct,
10   however, is part of the same misrepresentations purported to be published on
11   Defendant's website.  No where does Plaintiff allege separate allegations of
12   independently wrongful acts such as fraud.  "[T]he facts pleaded by a plaintiff must
13   show an intent to do something which takes the defendant's acts beyond those of a
14   mere competitor securing business for himself."  *Della Penna*, 11 Cal.4th at 390–91
15   (citation omitted).  Because Plaintiff has failed to plead an essential element as to its
16   interference with prospective economic advantage claim the Court **GRANTS**
17   Defendant's Motion.

18   **IV.    CONCLUSION**

19    Based on the foregoing discussion, Defendant's Motion is **GRANTED** in part
20   and **DENIED** in part.  Specifically, the Court dismisses Plaintiff's first, second, third,
21   fourth, and fifth causes of action without prejudice and with leave to amend.

22   ///
23   ///
24   ///
25   ///
26   ///
27   ///
28   ///

Plaintiff shall file an amended Complaint consistent with this Order, within 21 days of
the issuance of this Order.

**IT IS SO ORDERED.**

Dated:  August 30, 2024

HON. WESLEY L. HSU
UNITED STATES DISTRICT JUDGE