Katherine P. Sandberg, Esq. (State Bar No. 301117)
ksandberg@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 975-3700
Facsimile: (415) 975-3701

*[Additional counsel listed on next page]*

Attorneys for Plaintiff
Spotlight Ticket Management, Inc.

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> CONCIERGE LIVE, LLC, a Georgia corporation; <br><br> Defendant. | CASE NO.: 2:24-CV-00859-WLH-SSC <br><br> **SECOND AMENDED COMPLAINT FOR:** <br><br> (1) False Advertising under The Lanham Act (15 U.S.C. § 1125(a)(1)(B)) <br> (2) False Advertising under Cal. Bus. & Prof. Code §17500 *et. seq*. <br> (3) Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et. seq*. <br> (4) Intentional Interference with Contractual Relations <br> (5) Intentional Interference with Prospective Economic Advantage <br><br> **JURY TRIAL DEMANDED** |

*Hunton Andrews Kurth LLP*
*550 South Hope Street, Suite 2000*
*Los Angeles, California 90071-2627*

Edward T. Colbert, Esq.
(*Pro Hac Vice* application forthcoming)
ecolbert@HuntonAK.com
Erik C. Kane, Esq.
(*Pro Hac Vice* application forthcoming)
ekane@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
2200 Pennsylvania Avenue NW
Suite 900
Washington, DC 20037-1701
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

Christopher M. Pardo, Esq.
(*Pro Hac Vice* application forthcoming)
cpardo@HuntonAK.com
**HUNTON ANDREWS KURTH LLP**
60 State Street, Suite 2400
Boston, Massachusetts 02109
Telephone:  (617) 648-2800
Facsimile:  (617) 433-5022

**Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627**

Plaintiff Spotlight Ticket Management, Inc. ("Spotlight"), by its attorneys, brings this action against Concierge Live, LLC ("Concierge Live"), for false advertising in violation of the Lanham Act (15 U.S.C. §§ 1051, *et seq*.) and California Business and Professions Code § 17500 *et seq*., unfair competition in violation of the California Business and Professions Code § 17200 *et seq*., intentional interference with contractual relations, and intentional interference with prospective economic advantage, and alleges the following upon information and belief, except as to those paragraphs pertaining to Spotlight's own actions, which are alleged upon personal knowledge:

## I.    THE PARTIES

1.    Spotlight is a Delaware corporation with its principal place of business at 256635 West Agoura Road, Calabasas, California 91302.

2.    Spotlight does business as "TicketManager."

3.    Concierge Live is a Georgia limited liability company with a principal place of business at 931 Monroe Drive NE, Atlanta, Georgia 30308.

4.    Upon information and belief, none of the members of Concierge Live are residents or citizens of California or Delaware.

## II.    JURISDICTION AND VENUE

5.    This case is a civil action arising under the Lanham Act, 15 U.S.C. § 1051, *et seq*., and California statutory and common law.

6.    This Court has subject matter jurisdiction over the federal claims in this complaint pursuant to 15 U.S.C. § 1121 (action arising under the Lanham Act), 15 U.S.C. § 1125(a)(1)(B) (false description in commerce), 28 U.S.C. § 1331 (federal question), and 28 U.S.C. § 1338(b) (substantial and related claim under the Lanham Act).  This Court has also subject matter jurisdiction over these claims pursuant to 28 U.S.C. § 1332, as Spotlight and Concierge Live are citizens of different states and because the matter in controversy exceeds $75,000.

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

7.      This Court has supplemental jurisdiction over the claims arising under California law pursuant to 28 U.S.C. §§ 1338(b) and 1367(a) because the asserted state law claims are substantially related to the claims arising under the Lanham Act such that they form part of the same case or controversy.

8.      This Court has personal jurisdiction over Concierge Live because: (a) Concierge Live conducts business within California and this judicial district; (b) the causes of action asserted in this complaint arise out of Concierge Live's contacts with California and this judicial district; (c) Concierge Live has caused tortious injury to Spotlight in California and in this judicial district; and (d) Concierge Live has undertaken acts of unfair competition and false advertising that were directed at California with knowledge that the brunt of injury would be felt by Spotlight in California.

9.      Concierge Live has made misrepresentations to many California businesses in pitching its services that resulted in injuries to Spotlight being felt within the State of California.

10.     As discussed herein, the tortious activity discussed herein giving rise to Spotlight's causes of action were made in soliciting business from California companies that resulted in Spotlight losing business and business opportunities.

11.     Upon information and belief, Concierge Live knew Spotlight was located in California and that its tortious actions would be felt by Spotlight in California.

12.     Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in this judicial district, and a substantial part of property that is the subject of the action is situated in this judicial district.

## III.    FACTUAL ALLEGATIONS

### A.      Spotlight's Business

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

13.    Spotlight was founded in 2007 as a software startup to connect corporations and their customers with ticket and event management solutions.

14.    Since then, Spotlight has grown to managing and automating over 30 million invitations, registrations, and tickets annually.

15.    Spotlight serves its clients by managing ticket inventories and events, providing the systems for ticket delivery and fulfillment, as well as the technology for mobile entry into events.

16.    Spotlight also partners directly with professional and college sport teams, venues, and well-known third-party ticketing and event management applications to give Spotlight's customers and partners both a platform and the resources necessary to manage, analyze, and resell tickets.

17.    In addition to managing ticket inventories for companies, venues, and teams, Spotlight creates and manages loyalty programs that enable Spotlight's users to reward their own clients, prospects, and employees with live events.

18.    Spotlight also manages analytical technology that provides its users with data reporting on factors such as who used the tickets and why, which allows Spotlight customers to reduce waste and drive greater and new return on investment.

**B.     Spotlight's Partnership with Ticketmaster**

19.    Ticketmaster Entertainment, LLC ("Ticketmaster") is a preeminent ticket sales and distribution company that sells tickets for live entertainment events to the general public on behalf of its clients through its website, mobile app, and telephone call centers.

20.    In October of 2016, Spotlight and Ticketmaster entered into a Registered Vendor and Affiliate Agreement (the "Agreement"), whereby Spotlight was granted the exclusive right to directly integrate its technology with Ticketmaster's software and systems platform.

21.    Pursuant to the terms of the Agreement, Ticketmaster also agreed that Spotlight shall be the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

22.    Through this partnership, Ticketmaster and Spotlight enable companies to integrate tickets directly with their team and venue providers with technology including the discovery of inventory, transfer of mobile tickets, and attendance scan information in real time.

23.    Simply put, Spotlight is the only company that has Ticketmaster integration for business events and corporate ticket management– that is, the ability to access Ticketmaster's application programming interfaces ("APIs") to automatically and directly move Ticketmaster tickets without needing to go through the Ticketmaster website to do so.

24.    Spotlight pays Ticketmaster a significant annual fee each year in exchange for this exclusive integrated partnership, in addition to a percentage of annual revenue earned by Spotlight.

25.    To date, Spotlight has paid millions of dollars for the right to be the exclusive corporate ticket management platform for Ticketmaster and the only company to be directly integrated with Ticketmaster's software and systems platform.

26.    Both Spotlight and Ticketmaster have publicized their exclusive integration partnership and it is well known in the industry.

27.    Spotlight's exclusive integration partnership with Ticketmaster provides Spotlight with a significant competitive edge in relation to its competitors.

28.    The Agreement and Spotlight's exclusive integration partnership with Ticketmaster remains in full force and effect today.

**C.    Concierge Live and its Sordid History**

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

29.    Concierge Live was founded in 2008 by Ben Johnson ("Johnson"), Tren Hopkins ("Hopkins"), and Jason Nissen ("Nissen").

30.    In 2017, Nissen, who at the time was the Chief Executive Officer of Concierge Live, was arrested and charged by the United States Attorney's Office for the Southern District of New York with defrauding victims out of at least $70,000,000 by falsely representing that he was using victims' money to further a profitable, multi-million dollar wholesale ticket business, but actually spending the victims' money on himself.[1]

31.    For orchestrating what the Federal Bureau of Investigation referred to as a Ponzi scheme, Nissen was sentenced to more than two years in prison. Concierge Live was ultimately placed into bankruptcy as a result.

32.    Concierge Live was purchased out of bankruptcy by Guinio Volpone ("Volpone"), who today serves as the Chairman of Concierge Live in addition to owning the business.[2]

33.    Hopkins remained with Concierge Live through February of 2022.

34.    Volpone is a ticket broker with his own history of alleged unfair and deceptive business practices.

35.    For example, in 2016, Volpone was sued by the Multipurpose Civic Center Facility Board for Pulaski County, which owns the Simmons Bank Arena in Arkansas, for allegedly deceiving ticket buyers through an online scraping venture.[3]

---

[1]    *See* https://www.justice.gov/usao-sdny/pr/ceo-and-president-premium-ticket-resale-business-charged-engaging-multimillion-dollar (last accessed Jan. 31, 2024).

[2]    *See* https://www.conciergelive.com/about-concierge-live (last accessed Jan. 31, 2024).

[3]    *See* https://www.arkansasbusiness.com/article/112975/scalper-sued-for-vexing-verizon-visitors (last accessed Jan. 31, 2024).

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

36.    Moreover, in 2017, Volpone was named in a suit filed by Broker Genius, Inc. ("Broker Genius") against Drew Gainor ("Gainor") and Seat Scouts LLC ("Seat Scouts"), which Gainor co-founded and which Volpone partially owned, alleging that Seat Scouts stole technology from Broker Genius and rebranded it as their own product. *See Broker Genius, Inc. v. Guinio Volpone et al.*, No. 17-cv-8627 (S.D.N.Y.).

37.    Then, in January of 2019, Seat Scouts and Gainor were hit with a $4,500,000 judgment following a jury trial.[4]

38.    Broker Genius thereafter absorbed Seat Scouts and changed the name to Automatiq.

39.    Volpone currently serves as a Director on Automatiq's Board of Directors.[5]

40.    Gainor remains the current Chief Product Officer of Automatiq. He has also served as an advisor to Concierge Live since 2017.

41.    Additionally, in September of 2019, the Consumer Protection Division of the Office of the Attorney General of Maryland filed charges against Volpone and Event Ticket Sales, LLC ("ETS"), which sold secondary market event tickets online and which was also owned by Volpone, for violating Maryland's Consumer Protection Act and Interference with Internet Ticket Sales law by deceiving consumers into believing that they were selling tickets on behalf of or were otherwise affiliated with the relevant venues, events, or entertainers, when they were not, and inducing consumers to overpay for the tickets.[6]

---

[4] *See* https://www.ticketnews.com/2019/01/broker-genius-trial-seat-scouts-judgement/ (last accessed Jan. 31, 2024).

[5] *See* https://automatiq.com/company/ (last accessed Jan. 31, 2024).

[6] *See* www.marylandattorneygeneral.gov/News%20Documents/092619_SOC.pdf (last accessed Jan. 31, 2024).

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

42.    Volpone and his company settled their charges with the Maryland Consumer Protection Division, which included restitution to deceived consumers.[7]

43.    Next, in or about 2020, Volpone and ETS were investigated by the Pennsylvania Office of the Attorney General for charging hidden fees and refusing to honor its refund policies. A settlement was reached in November of 2020, which included an Assurance of Voluntary Compliance and a suspended penalty.[8]

44.    Finally, ETS was also investigated by the Office of the Attorney General for the State of New York for illegal business practices involving refunds, which was settled in September of 2021.[9]

45.    Concierge Live's current Chief Executive Officer is Brian Basloe ("Basloe"), who joined the company in 2019.

**D.    Concierge Live's Fraudulent and Deceptive Actions**

46.    Since at least 2019, Concierge Live has been publicly and falsely representing and advertising through marketing materials and direct communications with potential clients that (i) Concierge Live has the same integration with Ticketmaster as Spotlight, (ii) Concierge Live has the contractual right from Ticketmaster to use Ticketmaster's API for commercial purposes, (iii) Concierge Live has the same functionality as Spotlight, and (iv) Spotlight's relationship with Ticketmaster is merely a marketing agreement. None of these representations are true.

---

[7] *See* https://www.nottinghammd.com/2019/12/05/attorney-general-frosh-announces-settlement-with-event-ticket-sales-llc-guinio-volpone/ (last accessed Jan. 31, 2024).
[8] *See* https://www.northcentralpa.com/news/refunds-available-after-ags-office-reaches-settlement-with-online-ticket-vendor/article_f536d97e-2d52-11eb-81d1-7b9750b4e20e.html (last accessed Jan. 31, 2024).
[9] *See* https://ag.ny.gov/sites/default/files/2021.09.20_event_ticket_sales_aod_fully_executed.pdf (last accessed Jan. 31, 2024).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

47.     Concierge Live amplifies these misrepresentations through numerous statements on its  website (https://support.conciergelive.com/hc/en-us)  .

48.     On Concierge Live's website, on a page titled *How do I add Ticketmaster inventory into Concierge Live*, Concierge Live falsely states: "For Ticketmaster accounts, Concierge Live offers integration which will automatically create your Ticketmaster account's inventory" and that "[t]he integration process will create the tickets in Concierge Live…" (**Exhibit A**.)[10]

49.     The page indicates that it was uploaded on October 9, 2019, and was last updated four years ago – so in or about January of 2020.

50.     Embedded in Concierge Live's *How do I add Ticketmaster inventory into Concierge Live* webpage is a presentation deck which purports to "show[] how to integrate your Ticketmaster accounts into Concierge Live." This presentation deck is titled *Ticketmaster Integration (setup) – May 2020*. (**Exhibit B**.)

51.     This presentation purports to take users step by step through an integration process with Ticketmaster that simply does not exist.  For example:



---

[10] *See* https://support.conciergelive.com/hc/en-us/articles/360034613572-How-do-I-add-Ticketmaster-inventory-into-Concierge-Live- (last accessed Jan. 31, 2024).

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

52.     Likewise, on Concierge Live's webpage titled *What happens when I integrate a Ticketmaster account*, Concierge Live falsely states: "When a Ticketmaster account is integrated, inventory will be automatically be added to the Manage page for designated ticket admin" and instructs the user to "[s]ee the attached deck to learn more about the configuring Ticketmaster integrated tickets". (**Exhibit C**.)[11]

53.     The page indicates that it was uploaded on October 9, 2019, and was last updated four years ago.

54.     The presentation deck embedded in Concierge Live's *What happens when I integrate a Ticketmaster account* webpage is titled *TM Inventory Review & Configure – May 2020* and refers to a "Ticketmaster integrated account inventory" and a purported integration with Ticketmaster's platform. (**Exhibit D**.)

55.     For instance, the presentation deck provides:

### TM Inventory Review & Configure

- When Ticketmaster integrated account inventory is created, designated ticket admin need to configure the tickets to allow requests (inventory is created without shop/request permissions and attendee types).
- To review/manage a single event, click on the "review and configure" button.
- For season tickets or multiple events, mass configure is the easiest way for ticket admin to make edits to tickets in mass without having to configuration event by event.
- On the Manage page, click on the "Tickets" tab in the navigation.



56.     On Concierge Live's webpage titled *What is the difference between a Ticketmaster integrated mobile transfer and a non-Ticketmaster mobile transfer*, Concierge Live falsely states: "Through our Ticketmaster integration, Concierge

---

[11] *See* https://support.conciergelive.com/hc/en-us/articles/360034619532-What-happens-when-I-integrate-a-Ticketmaster-account- (last accessed Jan. 31, 2024).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Live automates the mobile transfer from Ticketmaster to the ticket requestor or attendees." (**Exhibit E**.)[12]

57.    The page indicates that it was uploaded on October 9, 2019, and was last updated two months ago – so in or about November of 2023.

58.    Embedded in Concierge Live's *What is the difference between a Ticketmaster integrated mobile transfer and a non-Ticketmaster mobile transfer* webpage is a presentation deck titled, *Delivery – Mobile* (**Exhibit F**), in which Concierge Live falsely claims to have a "Ticketmaster integration" through which Concierge Live can "automate[] the mobile transfer from Ticketmaster to the ticket requestor or attendees":

## Delivery - Mobile

Mobile transfers in Concierge Live fall into two categories:
- **Ticketmaster (TM) Integrated mobile ticket accounts:**
  - When a mobile ticket is processed for delivery, a ticket requestor is notified of a pending mobile transfer from Concierge Live. The email alerts the ticket requestor of the pending transfer, which will come from Ticketmaster. This notification is sent to requestors whether tickets are automatically or manually transferred.
  - Through our Ticketmaster integration, Concierge Live automates the mobile transfer from Ticketmaster to the ticket requestor or attendees (ticket admin are not required to login into Account Manager to transfer tickets to attendees).

59.    Concierge Live's webpage titled *How do I deliver Ticketmaster mobile tickets* directs users to see an embedded presentation deck concerning "transferring Ticketmaster mobile tickets." (**Exhibit G**.)[13] The page indicates that it was uploaded on October 9, 2019, and was last updated four years ago.

60.    In the embedded presentation deck,  titled *Delivery – Mobile – May 2020*, Concierge Live again falsely claims to have "Ticketmaster integration"

---

[12] *See* https://support.conciergelive.com/hc/en-us/articles/360034616312-What-is-the-difference-between-a-Ticketmaster-integrated-mobile-transfer-and-a-non-Ticketmaster-mobile-transfer- (last accessed Jan. 31, 2024).

[13] *See* https://support.conciergelive.com/hc/en-us/articles/360034617572-How-do-I-deliver-Ticketmaster-mobile-tickets- (last accessed Jan. 31, 2024).

through which Concierge Live can "automate[] the mobile transfer from Ticketmaster to the ticket requestor or attendees." (**Exhibit H**.)

61. On Concierge Live's webpage titled *How do I update ticket possession?*, Concierge Live falsely states: "For mobile tickets, ticket possession is automatically updated through Ticketmaster integration." (**Exhibit I**.)[14] The page indicates that it was uploaded on October 9, 2019, and was last updated four years ago. Embedded in this webpage is a presentation deck titled *Delivery – Ticket Possession – May 2020*. (**Exhibit J**.)

62. Upon information and belief, Concierge Live makes sales pitches to prospective clients where it orally touts the benefits of Concierge Live, including its purported integration with Ticketmaster.

63. Prospective customers hearing Concierge Live's pitch review its website and technical documentation that discusses the Ticketmaster integration, reenforcing the misrepresentations made during the sales pitch.

64. These representations – made in Concierge Live's marketing materials and in its interactions with potential clients – are fraudulent and false.

65. Concierge Live does not have Ticketmaster integration for corporate ticket management.

66. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

67. Spotlight is also the ***only*** company that has Ticketmaster integration for corporate ticket management.

68. To date, Spotlight has paid millions of dollars in annual fees for that privilege.

---

[14] *See* https://support.conciergelive.com/hc/en-us/articles/360034624272-How-do-I-update-ticket-possession (last accessed Jan. 31, 2024).

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

69.     Concierge Live knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

70.     Concierge Live also knows that Spotlight is the only company that has Ticketmaster integration for corporate ticket management.

71.     Concierge Live claims to be utilizing an application programming interface ("API") offered by Ticketmaster to access its inventory and facilitate purchases.

72.     However, such use of the Ticketmaster API is unlikely given that such use would violate the Ticketmaster terms of use.

73.     The use of Ticketmaster's API is governed by its Terms of Use located at https://developer.ticketmaster.com/support/terms-of-use/.

74.     The Terms of Use prohibit users of the Ticketmaster API from engaging in certain conduct.

75.     Specifically, as a condition precedent to users being granted a limited, conditional, no-cost, non-exclusive, non-transferable, non-sub-licensable license to use the Ticketmaster API, users must agree they will not:

> Sell, lease, or sublicense the Ticketmaster API or access thereto
> or derive revenues from the use or provision of the Ticketmaster
> API, whether for direct commercial or monetary gain or
> otherwise, except as set forth below.

(**Exhibit K**).

76.     The license to use Ticketmaster's API is expressly conditioned on users' preexisting agreement to comply with, and their actual compliance with, these Terms of Use.

77.     Any use of Ticketmaster's API that does not strictly comply with each and every provision of the Terms of Use exceeds the scope of the license to view

13

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

and use Ticketmaster's API. Concierge Live knows that it does not have actual integration with Ticketmaster and that any use of the Ticketmaster API would be in violation of Ticketmaster's Terms of Use and technological restrictions.

78.     In fact, Ticketmaster itself has been forced to warn consumers that Concierge Live's claims of integration with Ticketmaster's platform are false.

79.     In a public letter dated March 31, 2021, Ticketmaster affirmed that it entered into an "**exclusive** partnership" with Spotlight/TicketManager and that Spotlight is the "**only**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market." (**Exhibit K** (emphasis in original).)

80.     Ticketmaster further warns consumers that vendors like Concierge Live in the ticket and event management marketplace are "mis-representing … capabilities they have with Ticketmaster" and asks consumers to report any such false claims directly to Ticketmaster. (*Id*.)

81.     Upon information and belief, Ticketmaster sent this letter specifically to Concierge Live.

82.     Concierge Live in fact *knows* about Spotlight's contractual rights. On Monday, April 13, 2020, Brian Basloe from Concierge Live spoke to Ken Hanscom at Spotlight over the telephone. During that call, Basloe specifically indicated that Spotlight's exclusivity deal with Ticketmaster was making Concierge Live's life difficult.

83.     Upon information and belief, Concierge Live may not be using the Ticketmaster API directly.

84.     Upon information and belief, Concierge Live is utilizing a third party service to move tickets and to bypass the contractual restrictions set forth in the Ticketmaster API Terms of Use.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

85.    Use of a third party intermediary means that Concierge Live would not be integrated with the Ticketmaster system.

86.    If Concierge Live is indeed able to provide its services to its customers for a lower price than Spotlight, which it publicly claims, then it is only because Spotlight pays a significant annual fee for the right to be integrated with Ticketmaster, while Concierge Live avoids this substantial cost by falsely claiming that it is integrated with Ticketmaster without paying for that right and, upon information and belief, by utilizing APIs in violation of Ticketmaster's Terms of Use and/or by circumventing Ticketmaster's restrictions by going through a third party intermediary.

87.    Upon information and belief, even if Concierge Live was using one of the aforementioned improper methods to achieve similar functionality to Spotlight, they misrepresented or implied to customers that they in fact had a contractual integration with Ticketmaster for corporate events and corporate ticket management, a right exclusive to Spotlight.

**E.    Damages to Spotlight Caused by Concierge Live's Malfeasance**

88.    The ticket management industry is a niche industry.

89.    Its services are marketed primarily to companies that use a large amounts of tickets for various purposes in their businesses.

90.    It is standard practice to market ticket management services through direct sales pitches tailored to prospective clients.

91.    Concierge Live engaged in a marketing campaign promoting its ticket management services with false representations of integration with Ticketmaster to countless prospective customers through in person sales pitches.

92.    Representatives of Concierge Live, including Basloe, have repeated the above-described false representations concerning integration with Ticketmaster directly to prospective customers, including clients and potential clients of Spotlight.

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

93.     The full extent of Concierge Live's interference with Spotlight in the marketplace is presently unknown to Spotlight, but Spotlight has been made aware of the following instance of Concierge Live making false representations to consumers.

94.     In July of 2020, Spotlight's then-customer, a New York-based health care company, initiated a request for proposal ("RFP") process that involved both Concierge Live and Spotlight. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately lost this business to Concierge Live due in part, upon information and belief, to Concierge Live's false representations of integration with Ticketmaster.

95.     In April of 2021, Spotlight and Concierge Live engaged in an RFP process initiated by an American multinational automotive manufacturing company. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately lost this business to Concierge Live due in part, upon information and belief, to Concierge Live's false representations of integration with Ticketmaster.

96.     In or about September of 2021, Spotlight and Concierge Live pitched their services to a New York-based healthcare provider. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately lost this business to Concierge Live, however, because Concierge Live falsely represented to this company that it could perform all the same functionality as Spotlight – including integrations with Ticketmaster – but for a lower cost.

97.     Spotlight and Concierge Live were both engaged in an RFP process initiated by a major American airline that concluded in December of 2021. There was a probability of this company supplying economic benefits to Spotlight as a result. During this process, Concierge Live provided this company with a presentation deck falsely stating that Concierge Live had integration with

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Ticketmaster. Spotlight ultimately won that RFP process but, due to Concierge Live's fraudulent misrepresentations, for a reduced price.

98.    In March of 2022, Spotlight and Concierge Live pitched their services to an American auto parts retailer. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately lost this business to Concierge Live due in part, upon information and belief, to Concierge Live's false representations of integration with Ticketmaster.

99.    Spotlight and Concierge Live were engaged in an RFP process initiated by an American bank that concluded in March of 2022. There was a probability of this company supplying economic benefits to Spotlight as a result. During this process, Concierge Live falsely represented to this company that Concierge Live has integration with Ticketmaster and that Concierge Live has the same functionality as Spotlight. Spotlight lost this company's business to Concierge Live as a result.

100.    Spotlight and Concierge Live were engaged in an RFP process initiated by an American global investment bank and financial services company that concluded on July 11, 2022. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately lost this business to Concierge Live due in part, upon information and belief, to Concierge Live's false representations of integration with Ticketmaster.

101.    In November of 2022, Spotlight and Concierge Live pitched their services to an online food ordering and delivery company. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately lost this business, however, because Concierge Live falsely represented to this company that it could perform all the same functionality as Spotlight – including integrations with Ticketmaster – but for a lower cost.

102.    In March of 2023, Spotlight and Concierge pitched their services to the governing body of an American sports association. There was a probability of this

party supplying economic benefits to Spotlight as a result. Spotlight ultimately won this party's business but was informed that, after the pitch process, Basloe represented to this party that Concierge Live has the same integration with Ticketmaster as Spotlight and that Concierge Live has the same functionality as Spotlight and could do it cheaper.

103.   In the summer of 2023, a global automotive manufacturer approached Spotlight about certain integrations and indicated that Concierge Live represented it had integrations, *inter alia*, with Ticketmaster.  Upon information and belief, Spotlight ultimately lost this business to Concierge Live due in part to the automotive manufacturer believing Concierge Live's misrepresentations.

104.   In September of 2023, Spotlight and Concierge Live pitched their services to  a sports marketing agency that was working on behalf of an American financial services company. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately lost this business to Concierge Live due in part, upon information and belief, to Concierge Live's false representations that Concierge Live has the same integration with Ticketmaster as Spotlight and that Concierge Live has the same functionality as Spotlight.

105.   In December of 2023, Spotlight and Concierge Live pitched their services to a sports marketing agency that was working on behalf of an American business software company. There was a probability of this company supplying economic benefits to Spotlight as a result. During the pitch process, Concierge Live fraudulently represented that Concierge Live has the same functionality as Spotlight. Spotlight lost the company's business as a result.

106.   In December of 2023, Spotlight and Concierge Live pitched their services to an American insurance company. There was a probability of this company supplying economic benefits to Spotlight as a result. Spotlight ultimately this business on or about December 15, 2023, but, upon information and belief, due

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

to Concierge Live's fraudulent misrepresentation that Concierge Live has the same functionality as Spotlight, for a reduced price.

107.    Spotlight is also currently engaged in ongoing pitches and in RFP processes involving Concierge Live where Concierge Live's misrepresentations are actively causing harm to Spotlight.

108.    For example, Spotlight and Concierge Live are currently pitching their services to a multi-purpose stadium which hosts professional sports teams and events. There is a probability of this party supplying economic benefits to Spotlight as a result. Spotlight has learned, however, that during a call in December of 2023, Concierge Live falsely represented to this party that it could quickly and easily distribute tickets with Ticketmaster due to their integration with the Ticketmaster platform. Spotlight is at serious risk of losing this business, or winning its business at a reduced price, due to Concierge Live's misrepresentations.

109.    Spotlight and Concierge Live are also currently pitching their services to an American bank holding company. There is a probability of this company supplying economic benefits to Spotlight as a result. However, Spotlight has learned that Basloe falsely represented to this company that Spotlight's relationship with Ticketmaster was merely a "marketing relationship" – and not the exclusive integration partnership that it really is – and that Concierge Live has all the same functionality as Spotlight. Spotlight is at serious risk of losing this company's business, or winning its business at a reduced price, as a result.

110.    Spotlight and Concierge Live are also currently pitching their services to an American cable provider and are currently engaged in an RFP process initiated by an American auto insurance company. There is a probability of these companies supplying economic benefits to Spotlight as a result. Upon information and belief, Concierge Live is repeating its misrepresentations as to functionality and integration with Ticketmaster to both of these potential customers.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

111.    Spotlight has been engaged in numerous other RFP processes involving Concierge Live, including with a multinational beverage company (in August of 2022), a Canadian banking and financial services company (in February of 2023), and an American telecommunications company (in March of 2023). Upon information and belief, Concierge Live repeated its misrepresentations as to functionality and integration with Ticketmaster to these customers as well.

112.    Concierge Live's fraudulent conduct has thus inflicted and continues to inflict irreparable harm upon Spotlight.

113.    As a direct result of Concierge Live's actions, Spotlight has also lost the full benefit of the exclusive integration relationship with Ticketmaster for which Spotlight has paid annual fees totaling millions of dollars.

114.    As a direct result of Concierge Live's actions, Ticketmaster has lost the full benefit of its agreement with Spotlight based on lost commissions from Concierge Live taking customers based on fraudulent conduct.

115.    If left unchecked, Concierge Live's fraudulent actions will continue to irreparably harm Spotlight and deceive the market and public, including Spotlight's current and potential customers.

## **FIRST CAUSE OF ACTION**

(False Advertising under The Lanham Act (15 U.S.C. § 1125(a)(1)(B))

116.    All of the above allegations are hereby incorporated as if fully set forth herein.

117.    Title 15 of the United States Code prohibits false or misleading descriptions of fact in commercial advertising or promotion. 15 U.S.C. § 1125(a)(1)(B).

118.    The United States Code states: "(a) Civil Action (1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or

any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which [ ] (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act."

119.    Spotlight and Concierge Live are direct competitors in the United States market for ticket inventory, delivery and fulfilment management.

120.    Concierge Live has made false or misleading descriptions or representations of fact in interstate commercial advertising or promotion regarding its functionality and purported integration with Ticketmaster in its marketing materials and through direct sales pitches. These marketing activities misrepresented the nature, characteristics, or qualities of Concierge Live's products and services.

121.    The ticket management industry is a fairly niche industry driven by in person direct marketing pitches to companies.

122.    Concierge Live's direct sales pitches were a concerted marketing campaign aimed at customers where Concierge Live mispresented the nature of its services.

123.    Concierge Live's commercial messages and statements were either literally false or misleading and intended to deceive the market, the public, consumers, and potential consumers, including consumers of Spotlight.

124.    For example, the repeated representations that Concierge Live is integrated with Ticketmaster's platform are false, untrue, and misleading, as Concierge Live is not integrated with Ticketmaster.

125.    Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

126.   Upon information and belief, Concierge Live may actually use a third party intermediary and/or certain APIs provided by Ticketmaster in violations of Ticketmaster's Terms of Use.  Regardless of the method it uses, however, Concierge Live is simply not integrated with Ticketmaster's platform.

127.   Concierge Live has knowingly or willfully misrepresented to the public regarding the facts above or misled the public into believing that it had a contractual right to integrate with Ticketmaster.

128.   Concierge Live knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

129.   Ticketmaster itself has been forced to affirm to the marketplace that it entered into an "**exclusive** partnership" with Spotlight/TicketManager, to stress that Spotlight is the "**only**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market," and to warn consumers that vendors like Concierge Live are "mis-representing ... capabilities they have with Ticketmaster." (**Exhibit L** (emphasis in original).)

130.   These advertisements and promotions have actually deceived or had the tendency to deceive a substantial segment of Concierge Live's audience.

131.   Concierge Live's misrepresentations were material, in that they are likely to influence the purchasing decision and were made in bad faith for the purpose of deceiving the market, the public, consumers, and potential consumers.

132.   Concierge Live caused its services and false advertisement to enter interstate commerce.

133.   Spotlight has been injured as a result of the foregoing, either by direct diversion of sales from itself to Concierge Live, or by lessening of the goodwill which its services enjoy with the buying public.

134. Although the full extent of Spotlight's injuries due to Concierge Live's conduct is presently unknown, Spotlight as described above has lost business to Concierge Live due to the latter's false representations during pitches and RFP processes involving Spotlight. Even when Spotlight has won certain customers' business, it has been for a reduced price due to Concierge Live's misrepresentations. Spotlight is also currently engaged in ongoing pitches and in RFP processes involving Concierge Live where Concierge Live's misrepresentations are actively causing harm to Spotlight. Spotlight would not have lost the business of these entities, or been forced to sell services to them for a reduced price, had it not been for Concierge Live's unlawful, unfair, and fraudulent conduct.

135. Concierge Live has obtained profits and unjust enrichment through its deliberate and willful false advertisement under the Lanham Act.

136. Spotlight has sustained injuries in an amount not yet fully determined, while Concierge Live has been unjustly enriched through its deceptive practices towards consumers and misappropriation of Spotlight's goodwill.

137. As a result of Concierge Live's wrongful actions, Spotlight has suffered and will continue to suffer irreparable harm for which there is no adequate remedy at law. Unless Concierge Live's conduct is enjoined by this Court, Spotlight will continue to suffer irreparable harm.

138. Spotlight is entitled to an award of its attorneys' fees under 15 U.S.C. § 1117.

## SECOND CAUSE OF ACTION

(False Advertising under Cal. Bus. & Prof. Code § 17500 *et seq*.)

139. All of the above allegations are hereby incorporated as if fully set forth herein.

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

140.   California's False Advertising Law ("FAL") prohibits businesses from disseminating statements that are "untrue or misleading."

141.   Concierge Live has published false information concerning its functionality and purported integration with Ticketmaster in its marketing materials and made oral and/or written misrepresentations during direct sales pitches.

142.   These repeated representations that Concierge Live is integrated with Ticketmaster's platform or that it has a contract for integration with Ticketmaster are false, untrue, and misleading, as Concierge Live is not integrated with Ticketmaster, nor does it have a contractual right to be integrated with Ticketmaster.

143.   Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

144.   Upon information and belief, Concierge Live may actually use a third party intermediary and/or certain APIs provided by Ticketmaster in violations of Ticketmaster's Terms of Use.

145.   Regardless of the method it uses, however, Concierge Live is simply not integrated with Ticketmaster's platform.

146.   Concierge Live has knowingly or willfully misrepresented to the public regarding the facts above. Concierge Live knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

147.   Ticketmaster itself has been forced to affirm to the marketplace that it entered into an "**exclusive** partnership" with Spotlight/TicketManager, to stress that Spotlight is the "**only**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market," and to warn consumers that

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

vendors like Concierge Live are "mis-representing ... capabilities they have with Ticketmaster." (**Exhibit L** (emphasis in original).)

148.   Concierge Live is causing financial injury to Spotlight because these misrepresentations cause Spotlight to suffer lost sales, revenue, goodwill, and harm to its reputation. Although the full extent of Spotlight's injuries due to Concierge Live's conduct is presently unknown, Spotlight as described above has lost business to Concierge Live due to the latter's false representations during pitches and RFP processes involving Spotlight. Even when Spotlight has won certain customer's business, it has been for a reduced price due to Concierge Live's misrepresentations. Spotlight is also currently engaged in ongoing pitches and in RFP processes involving Concierge Live where Concierge Live's misrepresentations are actively causing harm to Spotlight. Spotlight would not have lost the business of these entities, or been forced to sell their services to them for a reduced price, had it not been for Concierge Live's unlawful, unfair, and fraudulent conduct

149.   As a direct result of Concierge Live's actions, Spotlight has also been damaged in that it has thus lost the full benefit of the exclusive integration relationship with Ticketmaster for which Spotlight over the life of the Agreement has paid millions of dollars.

## THIRD CAUSE OF ACTION

(Unfair Competition under Cal. Bus. & Prof. Code § 17200 *et seq*.)

150.   All of the above allegations are hereby incorporated as if fully set forth herein.

151.   California's Unfair Competition Law ("UCL") prohibits "unlawful, unfair, or fraudulent" conduct in business activities.

152.   Concierge Live has engaged in unlawful, unfair, and fraudulent conduct and has thus violated and will continue to violate California's UCL by making

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

materially false and misleading representations and advertisements concerning its functionality and its relationship with Ticketmaster.

153.    Through its public website, marketing materials, and direct communications with potential clients, Concierge Live has falsely represented that Concierge Live has the same integration with Ticketmaster as Spotlight, that Concierge Live has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement.

154.    On its website and marketing presentation decks – which have been posted and publicly available since 2019 – Concierge Live makes a litany of false claims of integration with Ticketmaster platform, including: "For Ticketmaster accounts, Concierge Live offers integration which will automatically create your Ticketmaster account's inventory"; that Concierge Live users can "integrate your Ticketmaster accounts into Concierge Live."; repeated references to a "Ticketmaster integrated account inventory"; claims to a "Ticketmaster integration" through which Concierge Live can "automate[] the mobile transfer from Ticketmaster to the ticket requestor or attendees"; and representations that "[f]or mobile tickets, ticket possession is automatically updated through Ticketmaster integration." (*See* **Exhibits A** through **Exhibit E**.) Representatives of Concierge Live, including Basloe, have repeated these above-described false representations directly to prospective customers, including in connection with pitches and RFP processes involving Spotlight

155.    These representations – made on Concierge Live's website, in its marketing materials, and in its interactions with potential clients – are fraudulent and false. Concierge Live does not have Ticketmaster integration. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

156.   Upon information and belief, Concierge Live may actually use a third party intermediary and/or certain APIs provided by Ticketmaster in violations of Ticketmaster's Terms of Use.   Regardless of the method it uses, however, Concierge Live is simply not integrated with Ticketmaster's platform.

157.   Concierge Live has knowingly or willfully misrepresented to the public regarding the facts above. Concierge Live knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

158.   Concierge Live's conduct, described above, constitutes unfair and fraudulent acts or practices in the conduct of a business, in violation of California's UCL, and is part of Concierge Live's anti-competitive scheme to trick consumers into believing that Concierge Live has integration with Ticketmaster, when it does not, and to divert profits away from Spotlight.

159.   Concierge Live's conduct is unfair because on its public website, in marketing materials, and in direct communications with potential clients, Concierge Live has falsely represented its relationship with Ticketmaster, claiming that Concierge Live is "integrated" with Ticketmaster's platform when it is not. Concierge Live falsely represents that it has the same integration with Ticketmaster as Spotlight, that Concierge Live has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement. Spotlight has paid millions of dollars for the privilege to be the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration. Concierge Live's conduct is also unfair because if Concierge Live is indeed able to provide its services to its customers for a lower price than Spotlight, which it publicly claims, then it is only because Spotlight pays a significant annual fee for the right to

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

be integrated with Ticketmaster, while Concierge Live avoids this substantial cost by falsely claiming that it is integrated with Ticketmaster without paying for that right and, upon information and belief, deceptively employing automated ticket purchasing software bots in violation of Ticketmaster's Terms of Use. This conduct is immoral, unethical, unscrupulous, and substantially injurious to consumers.

160.    Concierge Live's conduct is also fraudulent.  Concierge Live has falsely represented its relationship with Ticketmaster, claiming that Concierge Live is "integrated" with Ticketmaster's platform when in fact it is not. Concierge Live falsely represents that it has the same integration with Ticketmaster as Spotlight, that Concierge Live has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement. Spotlight has paid millions of dollars for the privilege to be the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

161.    Concierge Live's conduct is also unlawful, as it violates The Lanham Act and the California False Advertising Law.

162.    As described above, Concierge Live's misrepresentations are material and have been made to and relied upon by consumers.  Spotlight would not have lost the business of those entities, or been forced to sell their services to them for a reduced price, had it not been for Concierge Live's unlawful, unfair, and fraudulent conduct.

163.    Ticketmaster itself has been forced to affirm to the marketplace that it entered into an "**exclusive** partnership" with Spotlight/TicketManager, to stress that Spotlight is the "**only**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market," and to warn consumers that vendors like Concierge Live are "mis-representing ... capabilities they have with Ticketmaster." (**Exhibit L** (emphasis in original).)

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

164.   As a direct result of Concierge Live's actions, Spotlight has also been damaged in that it has thus lost the full benefit of the exclusive integration relationship with Ticketmaster for which Spotlight over the life of the Agreement has paid millions of dollars.

165.   These misrepresentations also cause Spotlight to suffer lost goodwill and harm to its reputation.

166.   Moreover, Concierge Live's conduct offends public policy and has caused substantial injury to consumers in that consumers, identified above, have partnered with Concierge Live on the false understanding that Concierge Live was integrated into Ticketmaster's platform.

167.   These injuries are substantial and are not outweighed by any countervailing benefits to consumers.

## FOURTH CAUSE OF ACTION

(Intentional Interference with Contractual Relations)

168.   All of the above allegations are hereby incorporated as if fully set forth herein.

169.   The Agreement constitutes a valid and existing contract between Spotlight and Ticketmaster.

170.   Pursuant to the Agreement, Spotlight was granted the exclusive right to directly integrate its technology with Ticketmaster's software and systems platform and Spotlight was made the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

171.   Concierge Live had knowledge of the existence of the Agreement and Spotlight's exclusive integration partnership with Ticketmaster.

172.   Concierge Live took intentional acts designed to disrupt and interfere with the Agreement and to hinder the parties' performance thereunder.

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

173.   Since at least 2019, Concierge Live has publicly and falsely represented and advertised through its public website, marketing materials, and direct communications with potential clients that Concierge Live has the same integration with Ticketmaster as Spotlight, that Concierge Live has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement.

174.   On its website and marketing presentation decks – which have been posted and publicly available since 2019 –  Concierge Live makes a litany of false claims of integration with Ticketmaster platform, including: "For Ticketmaster accounts, Concierge Live offers integration which will automatically create your Ticketmaster account's inventory"; that Concierge Live users can "integrate your Ticketmaster accounts into Concierge Live."; repeated references to a "Ticketmaster integrated account inventory"; claims to a "Ticketmaster integration" through which Concierge Live can "automate[] the mobile transfer from Ticketmaster to the ticket requestor or attendees"; and representations that "[f]or mobile tickets, ticket possession is automatically updated through Ticketmaster integration." (*See* **Exhibits A** through **Exhibit E**.)

175.   Representatives of Concierge Live, including Basloe, have repeated these above-described false representations directly to prospective customers, including in connection with pitches and RFP processes involving Spotlight.

176.   These representations – made on Concierge Live's website, in its marketing materials, and in its interactions with potential clients – are fraudulent and false. Concierge Live does not have Ticketmaster integration. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

177.   Upon information and belief, Concierge Live may actually use a third party intermediary and/or certain APIs provided by Ticketmaster in violations of Ticketmaster's Terms of Use.  Regardless of the method it uses, however, Concierge Live is simply not integrated with Ticketmaster's platform.

178.   Concierge Live knows that what it is doing is wrong. Concierge Live knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration for corporate events and corporate ticket management.

179.   Ticketmaster itself has been forced to affirm to the marketplace that it entered into an "**exclusive** partnership" with Spotlight/TicketManager, to stress that Spotlight is the "**only**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market," and to warn consumers that vendors like Concierge Live are "mis-representing ... capabilities they have with Ticketmaster." (**Exhibit L** (emphasis in original).)

180.  Concierge Live's acts have actually caused a disruption to and interfered with the Agreement and Spotlight's exclusive integration partnership with Ticketmaster and have hindered the parties' performance the Agreement and this partnership. By falsely claiming to be "integrated" with Ticketmaster's platform, Concierge Live has severely interfered with Spotlight's contractual right to be the only company to directly integrate its technology with Ticketmaster's software and systems platform and to be the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

181.  Concierge Live's acts have correspondingly interfered with Ticketmaster's contractual obligation to allow only Spotlight to directly integrate its technology with Ticketmaster's software and systems platform and to be the

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category.

182.   Concierge Live intended this result or knew that it was likely to occur.

183.   As a direct result of Concierge Live's actions, Spotlight has been damaged in that it has thus lost the full benefit of the exclusive integration relationship with Ticketmaster for which Spotlight over the life of the Agreement has paid millions of dollars.

184.   Moreover, although the full extent of Concierge Live's interference with Spotlight in the marketplace is presently unknown, Spotlight as described above has lost business to Concierge Live due to the latter's false representations during pitches and RFP processes involving Spotlight. Even when Spotlight has won certain customer's business, it has been for a reduced price due to Concierge Live's misrepresentations. Spotlight is also currently engaged in ongoing pitches and in RFP processes involving Concierge Live where Concierge Live's misrepresentations are actively causing harm to Spotlight.

185.   In addition to lost sales and revenue, these misrepresentations cause Spotlight to suffer lost goodwill and harm to its reputation.

186.   Concierge Live's conduct substantially caused this harm.

187.   The aforementioned conduct of Concierge Live was willful, oppressive, malicious, and/or fraudulent, thereby also justifying an award of punitive damages.

## FIFTH CAUSE OF ACTION

(Intentional Interference with Prospective Economic Advantage)

188.   All of the above allegations are hereby incorporated as if fully set forth herein.

189.   As described above, economic relationships existed between Spotlight and certain potential customers which had or have a probability of supplying economic benefits to Spotlight in the future.

190.   Concierge Live had knowledge of the existence of these relationships.

191.   Concierge Live took intentional acts designed to disrupt and interfere with these relationships.

192.   Since at least 2019, Concierge Live has publicly and falsely represented and advertised through its public website, marketing materials, and direct communications with potential clients that Concierge Live has the same integration with Ticketmaster as Spotlight, that Concierge Live has the same functionality as Spotlight, and that Spotlight's relationship with Ticketmaster is merely a marketing agreement.

193.   On its website and marketing presentation decks – which have been posted and publicly available since 2019 – Concierge Live makes a litany of false claims of integration with Ticketmaster platform, including: "For Ticketmaster accounts, Concierge Live offers integration which will automatically create your Ticketmaster account's inventory"; that Concierge Live users can "integrate your Ticketmaster accounts into Concierge Live."; repeated references to a "Ticketmaster integrated account inventory"; claims to a "Ticketmaster integration" through which Concierge Live can "automate[] the mobile transfer from Ticketmaster to the ticket requestor or attendees"; and representations that "[f]or mobile tickets, ticket possession is automatically updated through Ticketmaster integration." (*See* **Exhibits A** through **Exhibit E**.)

194.   Representatives of Concierge Live, including Basloe, have repeated these above-described false representations directly to prospective customers, including in connection with pitches and RFP processes involving Spotlight.

195.   These representations are fraudulent and false. Concierge Live does not have Ticketmaster integration. Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

196.    Upon information and belief, Concierge Live may actually use a third party intermediary and/or certain APIs provided by Ticketmaster in violations of Ticketmaster's Terms of Use.    Regardless of the method it uses, however, Concierge Live is simply not integrated with Ticketmaster's platform.

197.    Concierge Live knows that what it is doing is wrong.  Concierge Live knows that Spotlight is the exclusive ticket management platform for Ticketmaster for the business event and corporate ticket management category and is the only company that has Ticketmaster integration.

198.    Ticketmaster itself has been forced to affirm to the marketplace that it entered into an "**<u>exclusive</u>** partnership" with Spotlight/TicketManager, to stress that Spotlight is the "**<u>only</u>**" Ticketmaster partner "who has integration with Ticketmaster in the event and corporate ticket management market," and to warn consumers that vendors like Concierge Live are "mis-representing ... capabilities they have with Ticketmaster." (**Exhibit L** (emphasis in original).)

199.    Concierge Live's acts have actually caused a disruption to Spotlight's above-described economic relationships. As a direct result of Concierge Live's actions, and as described above, Spotlight has lost business to Concierge Live due to the latter's false representations during pitches and RFP processes involving Spotlight. Even when Spotlight has won certain customer's business, it has been for a reduced price due to Concierge Live's misrepresentations. Spotlight is also currently engaged in ongoing pitches and in RFP processes involving Concierge Live where Concierge Live's misrepresentations are actively causing harm to Spotlight.

200.    In addition to lost sales and revenue, these misrepresentations cause Spotlight to suffer lost goodwill and harm to its reputation.

201.    Concierge Live's conduct substantially caused this harm.

202.    The aforementioned conduct of Concierge Live was willful, oppressive, malicious, and/or fraudulent, thereby also justifying an award of punitive damages.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff Spotlight requests judgment against Concierge Live as follows:

A.    Issue a preliminary and permanent injunction enjoining Concierge Live from representing that Concierge Live has integration with Ticketmaster's platform;

B.    Issue a preliminary and permanent injunction enjoining Concierge Live from any further violations of the Lanham Act, California's Unfair Competition Law and California's False Advertising Law.

C.    Issue a preliminary and permanent injunction ordering Concierge Live to remove from its website and any marketing materials any representations that Concierge Live has integration with Ticketmaster's platform;

D.    Award Spotlight damages in an amount to be determined at trial;

E.    Award Spotlight enhanced damages under the Lanham Act;

F.    Award Spotlight punitive, special, and/or exemplary damages in an amount to be determined at trial;

G.    Order disgorgement of Concierge Live's profits;

H.    Award Spotlight its costs, attorneys' fees, and pre- and post-judgment interest; and

I.    Enter any other relief that is just and proper.

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

## <u>DEMAND FOR JURY TRIAL</u>

Spotlight hereby demands trial by jury for all causes of action, claims, or issues that are triable as a matter of right to a jury.

Dated:  September 20, 2024                          HUNTON ANDREWS KURTH LLP

By:    /s/ *Katherine Sandberg*
Katherine Sandberg

Edward T. Colbert, Esq.
Erik C. Kane, Esq.
Christopher M. Pardo, Esq.
(*Pro Hac Vice* applications forthcoming)

Attorneys for Plaintiff Spotlight Ticket Management, Inc.

Hunton Andrews Kurth LLP
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

# CERTIFICATE OF SERVICE

I hereby certify that on September 20, 2024, a true and accurate copy of the foregoing document was served upon all counsel of record via the Court's ECF filing system.

*/s/Katherine Sandberg*

**Hunton Andrews Kurth LLP**
550 South Hope Street, Suite 2000
Los Angeles, California 90071-2627

37

SECOND AMENDED COMPLAINT; DEMAND FOR JURY TRIAL

121880.0000012 DMS 308456908v1