**HUNTON ANDREWS KURTH LLP**
Katherine P. Sandberg, Esq. (State Bar No. 301117)
ksandberg@HuntonAK.com
50 California Street, Suite 1700
San Francisco, CA 94111
Telephone: (415) 975-3700
Facsimile: (415) 975-3701

*[Additional counsel listed on next page]*

Attorneys for Plaintiff
Spotlight Ticket Management, Inc.

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC., a Delaware corporation, <br><br> Plaintiff, <br><br> v. <br><br> CONCIERGE LIVE, LLC, a Georgia corporation; <br><br> Defendant. | CASE NO.: 2:24-CV-00859-WLH-SSC <br><br> *Assigned to the Hon. Wesley L. Hsu* <br><br> **SUPPLEMENTAL MEMORANDUM IN SUPPORT OF JOINT STIPULATION REGARDING PLAINTIFF SPOTLIGHT TICKET MANAGEMENT, INC.'S MOTION TO COMPEL** <br><br> Hearing Date: December 4, 2025 <br> Hearing Time: 11:00 a.m. <br> Courtroom: 790 <br><br> Action Filed: January 31, 2024 <br> Discovery Cut-Off: December 10, 2025 <br> Pretrial Conference: April 17, 2026 <br> Trial: May 4, 2026 |

**HUNTON ANDREWS KURTH LLP**
Edward T. Colbert, Esq. (*Pro Hac Vice*)
ecolbert@HuntonAK.com
Erik C. Kane, Esq.(*Pro Hac Vice*)
ekane@HuntonAK.com
2200 Pennsylvania Avenue NW
Suite 900
Washington, DC 20037-1701
Telephone:  (202) 955-1500
Facsimile:  (202) 778-2201

**HUNTON ANDREWS KURTH LLP**
Christopher M. Pardo, Esq. (*Pro Hac Vice*)
cpardo@HuntonAK.com
60 State Street, Suite 2400
Boston, Massachusetts 02109
Telephone:  (617) 648-2800
Facsimile:  (617) 433-5022

Pursuant to Local Rule 37-2.3, Plaintiff Spotlight Ticket Management, Inc. ("Spotlight") hereby submits its supplemental memorandum in support of its Joint Stipulation Regarding Plaintiff Spotlight Ticket Management, Inc.'s Motion to Compel (Dkt. No. 105, 107) ("Joint Stip.").

In its portion of the Joint Stip., Defendant Concierge Live, LLC ("Concierge Live") continues its pattern of obfuscation to try any way it can think of to avoid producing its actual financial information. In doing so, Concierge Live ignores the actual discovery dispute and tries to essentially argue what it perceives summary judgment issues through false and misleading portrayals of statements made by Ticketmaster's outside counsel in a discovery letter (*i.e.*, not evidence), claiming that it proves Spotlight is falsely advertising its exclusive Ticketmaster integration. Joint Stip. at 4. But as shown in Spotlight's Supplemental Memorandum in Support of its Opposition to Concierge Live's Motion to Compel (Dkt. No. 112), the Chief Strategy Officer of Ticketmaster has since provided sworn testimony (*i.e.*, evidence) attesting to Spotlight's exclusive relationship with it, entirely undermining Concierge Live's claims. (Dkt. No. 112-1, Scarborough Decl., ¶¶ 45-46).

Regardless of their lack of merit, Concierge Live's arguments are not appropriate at this juncture. The Court should disregard Concierge Live's effort to distract from its refusal to provide basic financial discovery and order Concierge Live to produce its general ledger for 2020-2025.

**A.  Concierge Live's General Ledger Is Relevant And Should Be Produced**

Concierge Live concedes that the information in its general ledger is "unquestionably relevant," and does not even attempt to argue that producing the ledger is unduly burdensome. Joint Stip. at 15. Concierge Live instead persists in its tit-for-tat game, holding relevant documents hostage unless Spotlight agrees to parity. *Id.* at 6. But only the sufficiency of Concierge Live's financials is at issue—not Spotlight's

1

SUPPLEMENTAL MEMO ISO JOINT STIPULATION REGARDING PLAINTIFF
SPOTLIGHT TICKET MANAGEMENT, INC.'S MOTION TO COMPEL
Case No.: 2:24-CV-00859

financials.  The distinction is critical, as the Court recognized during the Informal Discovery Conference.  Through the auditing process, Spotlight "already had an independent entity verify that they're not lying." Dkt. No. 107-2 at 34:4-11.

Moreover, until now, Concierge Live *never* complained about the sufficiency of Spotlight's financials, besides requesting updated records during the course of litigation (which Spotlight has provided).  Only now has Concierge Live raised issues for an apparently forthcoming IDC regarding Spotlight financials.  Regardless, during meet and confers, Spotlight's counsel already agreed to provide the more detailed financials *just now* requested by Concierge Live.  That has no bearing on Concierge Live not producing the basic financial information requested here.

Concierge Live cites to *Foundation for Global Sports Development v. United States Olympic Committee*, No. 220CV04782FMOPVCX, 2021 WL 6618556, at *12 (C.D. Cal. 2021), for the proposition that Spotlight "must show why existing information is not sufficient, and offer proof suggesting that the defendant fabricated data." Joint Stip. at 4 (internal citations and quotations omitted).  In *Foundation*, the defendant had already produced accounting records showing its use of plaintiff's donations on a transaction-by-transaction basis, but plaintiff wanted the same information in native form.  The Court declined to order production of the general ledger where plaintiff had not explained why the data provided was insufficient, and "offered no proof even suggesting that USOC or its counsel fabricated data." *Id.*  This is not the case here.

Nor does *G.P.P., Inc. v. Guardian Prot. Prods., Inc.*, 2020 WL 3868461, at *2-3 (E.D. Cal. July 9, 2020), support Concierge Live's position.  In *G.P.P.*, the Court reopened discovery after trial "for the limited purpose of addressing the issue of damages" that had occurred since trial. *Id.* at *2.  The Court denied plaintiff's motion to compel production of the general ledger, finding that it was "beyond the scope of limited discovery ordered by the Court," and that plaintiff's "supposition" that "the

2

SUPPLEMENTAL MEMO ISO JOINT STIPULATION REGARDING PLAINTIFF SPOTLIGHT TICKET MANAGEMENT, INC.'S MOTION TO COMPEL
Case No.: 2:24-CV-00859

ledger '*may* reflect any inaccuracy'" in other financial documents was insufficient to justify the discovery. *See id.* at *2-3 (emphasis in original).

Unlike in *Foundation*, Spotlight has pointed out not only financial irregularities in the financial records already produced, but also that information contained in the produced financial records was incomplete. *See generally* Joint Stip. at 9-11 (discussing financial irregularities). By way of additional example, although Concierge Live's financials appear to reflect multiple income streams and not just its corporate ticket management business, its costs appear undifferentiated on existing financials. As such, to allocate costs appropriately, Spotlight's expert requires the general ledger. The high value of Costs of Goods Sold might be attributable to Concierge Live's Secondary Ticket purchasing business, which one would expect to have high costs associated with resale of tickets, payment of commissions to marketplaces, etc., as opposed to corporate ticket management, which has little direct expenses other than fees to run its software. To that end, the general ledger will evidence precisely what Concierge Live allocated to Costs of Goods Sold as a deductible expense.

Moreover, the generalized financial documents produced lacked specificity regarding things like individual payments made to companies owned by Concierge Live's principals, something the general ledger will presumably explain given that such payments are being deducted as expenses in the financial documents produced thus far. *See, e.g., Tacori Enters. v. Nerces Fine Jewelry, Inc.*, No. CV1202753DSFVBKX, 2014 WL 12575818, at *2 (C.D. Cal. Apr. 9, 2014) (ordering production of general ledger where issues related to delving into alter ego of company and its shareholders); *Top Brand LLC v. Cozy Comfort Co. LLC*, No. CV-21-00597-PHX-SPL, 2022 WL 15519587, at *3 (D. Ariz. Oct. 27, 2022) (ordering production of company-wide general ledger which would be "useful to Defendants in determining how profits were moved and otherwise distributed among the Plaintiff companies").

Concierge Live admits there are discrepancies in the financials it provided (Joint

Stip. at 5), yet suggests without evidence that other years *were consistent* merely because Spotlight only cited certain examples, the purpose of which was merely to show it was receiving conflicting reports. The fact remains that the general ledger would be the source of truth, and would best be able to resolve inconsistencies.

Concierge Live's arguments regarding the sufficiency of its financials (Joint Stip. at 16-18) rely solely on supposition by Defendant's counsel, such as trying to ascribe fluctuations in revenues solely to macro-level issues like the COVID-19 pandemic. The reality is that the general ledger would show where income came from for each year (notably a number of years not influenced by COVID) as opposed to Concierge Live's own attorney's supposition as to reasons for such fluctuations, which is not evidence.

### B. Spotlight is Entitled to Additional Assurances Regarding the Reliability of Concierge Live's Financial Statements

While Concierge Live tries to downplay its representation to Truist (Joint Stip. at 6 and 20-21), ***it does not dispute that it explicitly told City National Bank that it was providing audited financials*** (going so far as to identify the alleged auditors of the financials – Joint Stip. at 2) ***while representing to this Court*** (and apparently Truist) ***that it did not have any audited financials***. Either Concierge Live lied to City National Bank or its counsel lied to this Court. That alone justifies delving into the source of truth of Concierge Live's financials by obtaining its general ledger. Combined with Concierge Live's principals' history of financial misconduct,[1] there is a very real risk

---

[1] Concierge Live suggests it and its principals were somehow innocent (Joint Stip. at 22), but the examples cited highlight the sanctionable conduct involving Guinio Volpone (Concierge Live's current Chairman/Owner) and lead attorney Christoph Heisenberg. Moreover, Defendant does not dispute Volpone was forced to settle with multiple state attorneys general to agree to refund tickets to consumers based on fraudulent practices. *See, e.g.,* https://www.northcentralpa.com/news/refunds-available-after-ags-office-reaches-settlement-with-online-ticket-vendor/article_f536d97e-2d52-11eb-81d1-7b9750b4e20e.html. Nor that Concierge Live's former CEO Jason Nissen pled guilty to defrauding consumers out of $60 million in a ponzi scheme. https://www.justice.gov/usao-sdny/pr/ceo-and-president-premium-

the financial records prepared for the litigation are inaccurate.

During the course of repeated meet and confers, Spotlight asked that Concierge Live produce financial records as maintained in the ordinary course of business, as opposed to reports it generated for litigation. Although Concierge Live argues those reports were "official records" (Joint Stip. at 18 n.9), the fact remains those "official records" do not match with documents produced to City National Bank, which one would expect would be reliable documents actually generated in the ordinary course and provided to a financial institution. Spotlight repeatedly asked for other reports, such as any financial reports generated for shareholders in the ordinary course, but received nothing but the litigation-generated reports and then finally the City National Bank documents that showed the discrepancies. While Spotlight pointed to one example of a discrepancy from a quick cursory review, Concierge Live tries to excuse the discrepancy as *de minimus*. Joint Stip. at 20. While one example of one line item from just one year might be characterized as *de minimus*, that fact remains that numbers do not correspond between the various reports, and Spotlight and its experts would have no way of discerning what is the source of truth. The general ledger would show which reports were accurate, and provide the needed details lacking in the aggregated reports.

Concierge Live chastises Spotlight for failing to address financial documents it serendipitously dumped on Spotlight the evening Spotlight filed its motion to continue the trial date. Joint Stip. at 19. But even if Concierge Live had produced such documents beforehand, they still fail to provide the level of detail needed. For example, they identify two income streams (ticket management and secondary ticket purchases), but do not differentiate costs for those two businesses.

It is time for Concierge Live to stop obfuscating and produce its general ledger that it seems so adamant to hide from litigation scrutiny.

---

ticket-resale-business-pleads-guilty-running-multimillion.

| | | |
|---|---|---|
| 1 | DATED: November 20, 2025 | **HUNTON ANDREWS KURTH LLP** |
| 2 | | |
| 3 | | By: */s/ Katherine P. Sandberg* |
| 4 | |     Christopher M. Pardo |
| 5 | |     Edward T. Colbert, Esq. |
| | |     Erik C. Kane, Esq. |
| | |     Katherine P. Sandberg |
| 6 | | Attorneys for Plaintiff |
| 7 | | Spotlight Ticket Management, Inc. |

6

SUPPLEMENTAL MEMO ISO JOINT STIPULATION REGARDING PLAINTIFF
SPOTLIGHT TICKET MANAGEMENT, INC.'S MOTION TO COMPEL
Case No.: 2:24-CV-00859

# CERTIFICATE OF SERVICE

I certify that, on November 20, 2025, I caused the foregoing to be e-filed with the Court via the CM/ECF system, which sent notification of such filing to the attorneys of record.

Dated: November 20, 2025                    By:   */s/ Katherine P. Sandberg*
                                                          Katherine P. Sandberg