HINCKLEY & HEISENBERG LLP
Christoph C. Heisenberg,
NY Bar No. 2395010 (*pro hac vice*)
cheisenberg@hinckley.org
445 Hamilton Avenue, Suite 1102
White Plains, New York 10601
Telephone: 212.845.9094
Facsimile: 212.820.9790

ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP
ERIC J. LORENZINI, State Bar No. 218433
elorenzini@elkinskalt.com
10345 W. Olympic Blvd.
Los Angeles, California 90064
Telephone: 310.746.4400
Facsimile: 310.746.4499

Attorneys for Defendant and Counterclaimant Concierge Live LLC

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION**

| | |
|---|---|
| SPOTLIGHT TICKET MANAGEMENT, INC. d/b/a TICKETMANAGER,<br><br>Plaintiff,<br><br>v.<br><br>CONCIERGE LIVE LLC,<br><br>Defendant.<br><br>CONCIERGE LIVE LLC,<br>Counterclaimant,<br><br>v.<br><br>SPOTLIGHT TICKET MANAGEMENT, INC., dba TicketManager,<br><br>Counterclaim defendant. | CASE No. 2:24-cv-00859-WLH-SSC<br><br>**CONCIERGE LIVE LLC'S SUPPLEMENTAL MEMORANDUM IN SUPPORT OF MOTION TO COMPEL PRODUCTION OF DOCUMENTS**<br><br>**Courtroom:** 790<br>**Hearing:** Dec. 4, 2025, at 11:00 am<br>**Discovery Date:** Dec. 10, 2025<br>**Pre-Trial Conf.**: April 17, 2026<br>**Trial Date**: May 4, 2026 |

Pursuant to the Court's October 28, 2025 Order (ECF No. 98) and Local Rule 37-2.3, Defendant-Counterclaimant Concierge Live LLC ("Concierge Live") respectfully submits the following Supplemental Memorandum in support of its Motion to Compel Production of Documents (ECF No. 109 ("Motion")).

Spotlight's opposition to the Motion rests on the premise that it satisfied its discovery obligations because it conducted a search for any "close proximity" between the word "integrat!" and "Ticketmaster" (and names of other providers). As explained in the Joint Stipulation, that response is insufficient.

Concierge Live's Motion presented evidence that Spotlight's production based on its proximity searches was facially incomplete. For example, Spotlight's marketing materials that Concierge Live obtained from non-parties contain documents with "intrgat!" proximate to "Ticketmaster" that Spotlight failed to produce.

Spotlight argues that Concierge Live has identified only a single instance of Spotlight failing to produce documents that contained "integrat!" proximate to "Ticketmaster." That is not true. For example, Spotlight ignores another highly relevant document that Concierge Live obtained from a nonparty, but that Spotlight failed to produce: a June 6, 2021 email from Spotlight's Brett Cahn to a Concierge Live customer, Shift4, which attached a March 31, 2021 letter from Ticketmaster, referencing the supposed "exclusive partnership with TicketManager" and stating that Spotlight is "our only Nexus Certified Partner who has an *integration* with *Ticketmaster* in the event and corporate ticket management market." Supplemental Declaration of Christoph Heisenberg ("Heisenberg Supplemental Declaration"), Ex. A (emphasis added).[1] This document goes to the core of Concierge Live's false

---

[1] In Spotlight's Answer to Concierge Live's Counterclaim, Spotlight denied that it "sent, or caused to be sent, to its customers, potential customers, and Concierge Live's customers the document attached as Exhibit L to the SAC [*i.e.*, the March 31, 2021 Ticketmaster letter]." *Compare* Concierge Live Counterclaim ¶ 51

advertising Counterclaim, since it shows that Spotlight used its false claim of "exclusive" access to Ticketmaster to obtain clients.

Concierge Live brought the Shift4 document to Spotlight's attention before Spotlight's November 13, 2025 submission of its response to the Motion, but Spotlight declined to offer any explanation for its failure to produce the document.

Concierge Live discovered another example of the deficiencies in Spotlight's production *during* the briefing of the Motion. On November 10, 2025, non-party Gibson Dunn Crutcher produced documents in response to Spotlight's own subpoena. Gibson Dunn's production included a December 4, 2024 email from Spotlight's head of sales, Spencer Korey, to Gibson Dunn (to whom Spotlight was pitching its business) representing that "the *Ticketmaster integration* is Exclusive to TicketManager." *See* Heisenberg Suppl. Decl., Ex. B (emphasis added).

As is plain from the italicized text, Spotlight's email contains the search terms in proximity—the search terms that Spotlight professes to have utilized. The January 8, 2025 Gibson Dunn email also postdates a litigation hold, which means that it should still exist in Spotlight's email system (unlike the deck presented by Spotlight to another potential client, and discussed in the Joint Stipulation, which Spotlight asserts was deleted from its server). Yet, Spotlight failed to produce it.

Concierge Live brought the Gibson Dunn document to Spotlight's attention on November 12, 2025, **prior to Spotlight's response to this Motion**, but Spotlight did not offer any explanation for its non-production.

Although Spotlight is correct that the Court cannot compel it to produce documents that it does not have, the evidence shows that Spotlight does have the documents. As noted above, some missing relevant documents post-date the start of

---

(ECF No. 71 at #1006), *and* Spotlight Answer to Counterclaim ¶ 51 (ECF No. 73 at #1041). The Shift4 email—which was not produced by Spotlight—reveals Spotlight's denial to be false.

the litigation. Moreover, Spotlight's declarations regarding its searches lack foundation or any concrete facts. For example, Spotlight does not present a declaration from the person(s) who conducted the searches. Instead, Spotlight offers only a declaration of Erik C. Kane, outside counsel for Spotlight, which merely states that he directed someone at Spotlight to perform searches. *See* Decl. of Erik C. Kane in Support of Joint Stipulation Regarding Concierge Live's Mot. to Compel Production of Documents (attached as Exhibit 2 to the Motion; "Kane Decl.") ¶¶ 3–7. Moreover, the Kane Declaration does not state that Spotlight produced all non-privileged responsive documents resulting from the proximity searches, only that some production occurred "as a result." *See id*. ¶ 7.

Likewise, Spotlight does not offer a declaration that it produced all relevant non-privileged documents that contain the more specific search phrase (e.g., titles of relevant slides) formulated by Concierge Live after its review of Spotlight's initial production. To the contrary, Spotlight admits a wide gap between the number of documents that it identified in its searches for those specific phrases and the number of documents it produced. *See, e.g.*, Kane Decl. ¶ 20.

Spotlight offers no persuasive explanation of why that wide gap does not compel the need for a supplemental review and production of documents by Spotlight. Spotlight instead resorts to vagaries, such as the statement that it ran the demanded searches and got **50,000 hits** for just one phrase and **25,000 hits** for another. But Spotlight tellingly does not address the "exclusive integration" phrase—one of the phrases that Concierge Live asked Spotlight to search for—which Spotlight admits resulted in 6,000 hits; yet Spotlight produced only 204 documents containing this phrase. It is unlikely that the phase "exclusive integration" appears in another context irrelevant to this case, and it is not burdensome for Spotlight to review and produce 6,000 documents. Mot. at 18.

So that Concierge Live could address Spotlight's claim of burden, it repeatedly asked Spotlight to identify its actual search results. Indeed, Concierge

Live's joint stipulation in support of its Motion contains a table and Concierge Live requested during the meet-and-confer that Spotlight specifically identify its search hits in that table, but Spotlight declined to do so, taking cover behind its claims of "burden" with respect to two *unspecified* searches. *See id.* ¶ 32.

Spotlight's only attempt to reconcile the difference between the number of hits on the specific phrases and the much smaller number of documents produced is that slides might not contain the words used in its initial proximity searches. But Concierge Live knows, based on Spotlight's existing production, that slides containing certain specific phrases (such as "Capabilities Matrix") contain terms that would have matched Spotlight's proximity search, yet Spotlight's production contains only a fraction of such slides that exist in Spotlight's records.

By its own admission, Spotlight's searches for the specific phrases have identified a volume of files orders of magnitude larger than what Spotlight produced. *See, e.g.*, Kane Decl. ¶ 20. Rather than validate the sufficiency of Spotlight's preliminary searches, the disparity in the number of these search results <u>in Spotlight's records</u> and the small number of documents with those terms that Spotlight has <u>produced</u> should cause the Court alarm about the incompleteness of Spotlight's prior searches. This conclusion is further reinforced by the instances in which Concierge Live independently obtained from non-parties copies of Spotlight's promotional materials that contained the terms that Spotlight purportedly used in its proximity search, but that were not produced by Spotlight. There is no basis for Spotlight refusing to produce documents resulting from searches of relevant phrases.

Spotlight's response to the Motion also asserts, based on a conclusory declaration from outside counsel without foundation, that "after extensive searching, Spotlight was unable to locate a single slide deck that purportedly had 'fallen into a gap'." Mot. at 5 n.2. Yet, Spotlight has refused to identify any specific numbers, arguing that even running the searches themselves is burdensome.

Spotlight states that "[a] mere suspicion that additional documents must exist is an insufficient basis to grant a motion to compel." *Id*. at 18 (quoting *Edge Sys. LLC v. Ageless Serums LLC*, 2021 WL 4497505, *7-8 (C.D. Cal. Aug. 20, 2021)). But Concierge Live's motion is not based on "mere suspicion." It is apparent from the productions by non-parties that either documents responsive to the litigation were deleted, which would be troubling, or that they existed but Spotlight's searches and/or production were inadequate.

At a minimum, Spotlight should be ordered (i) to provide an explanation in the form of an affidavit from the person(s) who conducted the searches and the production—with proper foundation and specific facts regarding the search and production; and (ii) to make a supplemental production of the responsive, non-privileged documents resulting from the proximity searches and the searches for the more specific phrases.

DATED: November 20, 2025        HINCKLEY & HEISENBERG LLP


By: */s/ Christoph C. Heisenberg*
CHRISTOPH C. HEISENBERG
Attorneys for Concierge Live LLC


DATED: November 20, 2025        ELKINS KALT WEINTRAUB REUBEN GARTSIDE LLP


By: */s/ Eric J. Lorenzini*
ERIC J. LORENZINI
Attorneys for Concierge Live LLC